THE GAYLORD MANUFACTURING COMPANY, Respondent, v. SARAH O. ALLEN, Administratrix, etc., Appellant.

In the absence of fraud or latent defects the acceptance of an article upon an executory contract of sale, after an opportunity to examine, is a consent and agreement that the quality is satisfactory and conforms to the contract, and bars all claim for compensation on account of any defects.

The result is the same whether the agreement as to the quality is implied or expressed.

(Argued September 24, 1873; decided October 7, 1873.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, affirming a judgment in favor of plaintiff, entered upon the report of a referee.

This action was brought by plaintiff, as assignee of the Chicopee Malleable Iron Works, to recover a balance claimed to be due upon sale to Richard L. Allen, defendant's intestate, of a quantity of malleable iron castings. The answer set up as a counter-claim a breach of contract as to time of delivery, and a warranty of quality and breach thereof. The reply denied the warranty, alleged acceptance, and that all delays were occasioned by the neglect of defendant to furnish patterns as agreed. The facts sufficiently appear in the opinion.

*John L. Cadwalader* for the appellant. As the iron was to be used for a particular purpose, there was an implied warranty. (*Hoe* v. *Sanborn*, 21 N. Y., 552, and cases cited.) If there was a warranty, defendant's only course was to use the goods and counter-claim his damages when called upon to pay. (*McCormick* v. *Dawkins*, 45 N. Y., 265; *Rust* v. *Eckler*, 41 id., 488; *Miller* v. *Eno*, 14 id., 597; *Vassar* v. *Livingston*, 13 id., 248; *Reab* v. *McAllister*, 8 Wend., 109; *Poulton* v. *Lattimore*, 9 B. & C., 259.)

*John L. Hill* for the respondent. Defendant cannot complain of delay if he caused it by failing to send perfect patterns. (*Cox* v. *James*, 4 Alb. L. J., 127; *Hill* v. *Grant*, 5 id., 44; *Austin* v. *Steamb. Co.*, 43 N. Y., 75; *Brown* v. *Vredenburgh*, id., 195; *Matthews* v. *Coe*, 49 id., 57.) The contract was executory, and defendant's acceptance and use of the castings bars all claim for compensation on account of any defects. (*Russ* v. *Eckler*, 41 N. Y., 488, and cases cited; *Dutchess Co.* v. *Harding*, 49 id., 321; *McCormick* v. *Dawkins*, 45 id., 562; *Cassidy* v. *Le Fevre*, id., 562; S. C., 57 Barb., 313.)

ALLEN, J. Whether the contract was made before, or on or after the 7th of January, 1865, is not material; or whether it rested partly in parol and partly in writing, or otherwise. It would seem from the evidence that the principal negotiation was verbal, at a personal interview between the agents

of the contracting parties at the works of the plaintiff at Chicopee and at Northampton, the parties visiting the latter place to inspect one of the machines for which castings were wanted, at which interview the referee was authorized to infer from the evidence that the character, description and quality of the castings, and the purposes for which they would be wanted, were understood by the parties; and that they parted, leaving nothing but the terms or prices at which the plaintiff would contract to furnish them undetermined. The evidence is that, at parting, the representative of the Chicopee Malleable Iron Works, the contracting party, and to whose obligations and rights the plaintiff has succeeded, was requested by the representative of defendant's intestate to inform him by letter the terms on which the company would take the contract or do the work.   The letter was written on the seventh of January, stating the price per pound at which the castings would be made, and promising, if an order should be given, to put the patterns in the works as soon as they were received, and stating that the writer had no doubt that the first delivery would be made as required, and that monthly deliveries would be continued,)and promising to make every exertion to complete the order as desired, concluding with a statement that, in all probability, the company would be able to meet every requirement, and expressing a hope to receive the order, and promising prompt attention.   The reply to this was an order, under date of tenth of January, for a large number of castings of different descriptions and weights, with a specification of the date and times at which they would be wanted, and promising to send most of the patterns the next morning and the balance in a few days, except those for a pony machine, which would not be ready until spring, the order concluding with the expression of a hope that the company would be able to furnish the castings ordered in quantities according to the date specified, and of suitable quality.   But following the signature to the order, the following note is added: "The above to be at sixteen cents (16c.) per lb., as agreeable to your letter of January 7, 1864, and

to be of the best quality and suitable to the purpose designed."
No answer was made to this order, in writing or verbally, so
far as appears; but the contracting company—hereafter called
the plaintiff, as the plaintiff has taken its place, under the
contract—proceeded on receipt of the patterns to manufacture
and furnish the castings. Whether the agreement was con-
summated by the letter of the seventh of January, fixing the
price as found by the referee, or by that of the tenth of Janu-
ary, acceding to the terms and ordering the castings, is not
material. There is no dispute that the contract was made
substantially as found by the referee. Whether the adden-
dum to the letter of the defendant's intestate is or is not a
part of the contract, the legal effect is the same. The referee
has not found that there was any warranty, express or
implied, of the quality of the castings, or that they should
be suitable to the purpose for which they were designed, and,
so far as appears, was not requested to find such fact. There
is no ground for complaint that the castings were not of the
best of iron, and of the best quality as castings, after they
were finished. The only objection to them was, that they
were not well or sufficiently annealed, and were not for that
reason suitable for the purpose for which they were required,
or could not as readily or profitably be wrought and applied
to such purposes as if they had been more perfectly or
thoroughly annealed. The law would imply precisely that
which the defendant's claim made a part of the express con-
tract. This was an executory contract for the manufacture
and sale of goods, and is distinguished from a sale of goods
in existence, defined and specifically sold. A contract to
manufacture and deliver an article at a future day, carries
with it an obligation that the article shall be merchantable,
or, if sold for a particular purpose, that it shall be suitable
and proper for such purpose. (*Hargous* v. *Stone*, 1 Seld.,
73, and cases cited by Judge PAIGE, at page 86; *Reed* v.
*Randall*, 29 N. Y., 358; *Dutchess Co.* v. *Harding*, 49 id., 321.)
Incorporating into the agreement the obligation which the law
implies would superadd nothing to the contract, or vary its

nature or affect the remedy upon it. (*Sprague* v. *Blake*, 20 W. R., 64.) Whatever agreement there was, whether expressed or implied, was a part of the contract, and was not a special warranty or agreement collateral to it, and, in the absence of fraud or artifice in inducing an acceptance of the article, did not survive the execution and performance of the contract.

It is not intended to express an opinion as to the rule in case there were latent defects, or those which could not be discerned at the time of the delivery or acceptance of the articles. But in the absence of fraud or latent defects, an acceptance of the article sold upon an executory contract, after an opportunity to examine it, is a consent and agreement that the quality is satisfactory and as conforming to the contract, and bars all claim for compensation for any defects that may exist in the article. The party cannot, under such circumstances, retain the property, and afterward sue or counter-claim for damages, under pretence that it was not of the character and quality or description called for by the agreement. (*Dutchess Co.* v. *Harding*, and *Reed* v. *Randall*, *supra*, and cases cited; *McCormick* v. *Sarson*, 45 N. Y., 265.) The dissents in the latter case were not to the principle decided, but to its application under the facts and circumstances of that case.

Although the referee has not found, in terms, that the quality of the castings was patent and easily to be discerned upon inspection and attempt to use them, and that the defendant had full opportunity to and did examine them and know their quality, the evidence clearly shows this to have been so, and the fact is clearly to be implied from the findings of the referee. It was the duty of the intestate, therefore, to return the defective castings at once, and, having omitted to do so, he must be deemed in law to have waived all objections to them. And the result is the same, whether the agreement as to the quality of the articles is implied or express. But the report of the referee is, that the intestate did object to some of the castings, and they were reannealed by the plaintiff, and returned to and

accepted by the intestate; and that the residue of the castings were accepted and used without objection or complaint. This was a waiver of all objection to the quality of the articles, and an assent to accept them in performance of the contract. The report might have gone much further. The evidence would have warranted the referee in finding that the intestate voluntarily, after a delivery of some of the castings, and without claiming that they were not of the quality called for by the contract, employed the plaintiff to reanneal them, and agreed upon the price to be paid, and had others reannealed elsewhere, without making claim upon the plaintiff. The whole case shows that the castings were regarded at the time of the delivery and acceptance, and when their quality and condition was well known, as well by the intestate as by the plaintiff, as answering the description and call of the contract; and that the claim that they did not do so was an after-thought, when the plaintiff had declined to accept the note of the intestate instead of the money for the balance due. There was no agreement to furnish the castings at any particular time, and the referee has so found.

As there were no breaches of the contract by the plaintiff established upon the trial, entitling the plaintiff to counterclaim for damages, it is unnecessary to examine the questions made as to the other and hypothetical findings of the referee, to the effect that if there was any failure of the plaintiff to perform the contract, either as to time or the quality of the articles, such failure was caused by the acts of the intestate, and was therefore excused. There were several objections and exceptions to evidence upon the trial, but no point is made upon them here, and no error seems to have been committed to the prejudice of the defendant in that respect. Upon the merits the facts found, as well as upon the law of the case, the plaintiff was entitled to a judgment. The offer of the plaintiff to deduct a specified sum from the claim as made for the "sake of peaceful settlement," at the same time insisting upon a legal right to demand the whole, not having been accepted by the intestate, is not binding upon

the plaintiff, and cannot operate as an admission that any deduction should be made, and the defendant has failed to show that any particular sum should be deducted for castings returned or furnished in excess of orders.

The judgment must be affirmed.

All concur; GROVER and FOLGER, JJ., concurring in result. Judgment affirmed.