People agt. Stephens.

# SUPREME COURT.

THE PEOPLE OF THE STATE OF NEW YORK agt. WILLIAM C. STEPHENS, THOMAS GALE and others.

*Action by the state to recover damages — contract — fraudulent combination and conspiracy — action in bar — nonsuit.*

Where the state brought an action against four principal defendants, claiming damages for a fraudulent combination and conspiracy in obtaining a contract from the state in reference to the performance of public work for it, and it appeared on the trial that previously the state had commenced an action against two of the same defendants for precisely the same cause, which was tried upon a demurrer interposed by the defendants upon three grounds, two of the grounds not going to the merits of the action, and the other involving the merits, and judgment was rendered on the trial some two or three years since for the defendants on the demurrer :

*Held*, that this judgment was a bar to the present action, and a nonsuit was proper.

The judgment of a court of competent jurisdiction upon a question directly at issue between parties, unless reversed, forever concludes and estops all parties to the action, and those in privity with them from questioning its accuracy or justice in another action. And this rule applies equally to judgments on demurrer.

The demurrer in the first action in this case was but a single demurrer, although it was based upon three grounds. It was this demurrer which came on for argument and upon which the court ordered judgment for the defendants.

This demurrer was sustained, not in part but as a whole, and that could only be done by reaching a conclusion unfavorable to the plaintiffs upon every issue it presented. The judgment on the demurrer in favor of the two defendants in that action being rendered on the merits of the action and being final, it presented a complete estoppel in their favor in this action.

All the acts of the two defendants set out in the complaint in the former action, and which are identically the same as those contained in the complaint in the present action, are charged as done in confederacy

and combination with others, those others being the present defendants, not then sued, and it was of those acts then and now charged, this court solemnly decided and adjudged, in the language of the demurrer, that they were not "sufficient to constitute a cause of action."

Therefore, the two defendants in this action, not sued in the former action, being in privity with the two defendants in the former action, the estoppel in their favor is just as effectual as in favor of the two defendants in the former action.

The proposition that where a contract for work, labor and services has been procured by an illegal and unlawful combination to put up the price, the party for whom the work is done can, with full knowledge of such combination, require and demand its performance voluntarily and with full knowledge pay the stipulated price, and then in an action recover his damages, which, of course, is the difference between the price which the contract calls for and the sum for which it could have been let had such combination not existed, cannot be maintained.

When the party complaining directs and requires the fulfillment of such contract, he stands before the court asking compensation for his own folly, and redress for a grievance which he has himself created, a redress to which he is not entitled, because he has himself directed such fulfillment.

The state, as a party to such contract, acts through its legally constituted officers, whose powers are plainly defined by law, and within these powers actually conferred upon such officers, their action is as obligatory upon the parties whom they represent as that of the agent of the private citizen.

*Albany Circuit, January,* 1876.

MOTION by defendants for a nonsuit.

*E. W. Paige & Matthew Hale,* for people.

*Frank Hiscock, William C. Ruger & Henry Smith,* for defendants.

WESTBROOK, *J.* — This action was commenced in March, 1873, by Francis C. Barlow, then attorney-general of the state. Its object is to recover the damage which the plaintiffs have sustained by reason of a contract made between the state and the defendant Stephens, dated the 31st day of

December, 1866, whereby the latter undertook to keep section number one of the Erie canal in repair, as in the contract is particularly defined, for the period of five years from the 1st day of January, 1867, for the price or sum of $70,000 per year, and also during the same period to dredge the Albany basin and remove and deposit the material excavated, likewise particularly described in said contract, for the sum of seventy cents per cubic yard. This contract, immediately upon its execution, was, with the consent of the state, assigned by the defendant Stephens to the defendant Gale, who, as the complaint avers, " represented as well himself as the defendants Belden and Denison, * * * and that said Gale and said Belden and Denison have performed said contract."

From the statement just made it will be seen that the fulfillment of the contract according to its terms is conceded, and that no claim is made for damages founded upon an unfaithful, dishonest or improper compliance with the conditions of the agreement.   On the contrary, a further inspection of the complaint shows that the alleged wrongful acts of the defendants for which redress is sought were anterior to the execution of the instrument, under which the work was performed.   It is alleged that, on the 28th day of December, 1866, " the contracting board," which " was a board of public officers created by law, and consisting of the three canal commissioners of the state of New York, the state engineer and surveyor, and the auditor of the canal department," were, according to their advertisement, on that day to receive proposals to do the work, which was let as before stated to the defendant Stephens, and performed, as also before stated, by the defendants Gale, Belden and Denison.   That in order to compel the plaintiffs to let the work at higher rates than it was reasonably worth, and above those which could have been obtained upon a fair competition, " the defendants combined, conspired and confederated together to deceive and defraud the plaintiffs," and to that end, before the bids were

opened on that day, organized a meeting, at which the right or privilege of bidding for such work, and controlling all other bids, was sold at auction, by which certain of the defendants obtained the control of the bids. That such control having been obtained, some bids were withdrawn, others were made informal, other bidders were induced to withdraw, and by those means, in ignorance of the combination and conspiracy, the contracting board aforesaid were induced to accept a bid which was in the name of the defendant Stephens, and to award to him the contract. That also by these means the officers of the state, supposing that the terms of Stephens were the best to be obtained, a much larger price was agreed to be paid for the work than it was reasonably worth, and thus the state was greatly damnified and injured by the payment of the excessive prices stipulated for in the agreement.

The present trial, with a struck jury, was commenced April 3, 1876, and, at the close of the plaintiffs' evidence, and after some documentary testimony had been given by the defendants to enable them to present the questions involved therein, a motion is made in behalf of the defendants for a nonsuit, upon substantially two grounds : First. That the plaintiffs are barred from maintaining this action by reason of a former judgment of this court rendered in one brought by these plaintiffs against two of these defendants, Stephens and Gale, on the 2d day of June, 1870. Second. That whatever conspiracy existed, the state, having (as is claimed the evidence fully establishes), with full knowledge thereof, insisted upon the performance of the contract, and having voluntarily, with complete information of every fact now relied upon as a ground of recovery, paid its money, is in no situation to recover damages for acts which itself directed, and which, by such direction, it determined should be incurred. These propositions were discussed with very great learning and ability by the counsel representing the various parties, and present questions of gravity and importance as well as

novel and interesting. They have been considered with all the care which continuous daily duty in the court room afforded, and the results of such consideration will now be stated.

The prior suit, the judgment in which is pleaded as a bar to any recovery in this, was commenced in November, 1868. It was an action brought by the plaintiffs in this, the people of the state of New York, against two of the present defendants, William C. Stephens, the original contractor, and Thomas Gale, the assignee, and one of the executors of such contract. The object of the action was to set aside the same agreement which is the subject of controversy in this, on account of the identical alleged unlawful and illegal acts which are urged as the grounds of recovery in the present; and also to recover the damages which the state had sustained up to the time of bringing such action, by reason of such contract and the execution thereof. There is no substantial fact alleged in the complaint in the present cause which was not also averred in the other, and many parts of each are clothed in the same language. To justify a recovery in either case, according to the theory of the plaintiffs, the same facts would be proved and the same arguments urged. The only difference upon the trial of the two actions would be, that when this suit was commenced the contract had been fully performed; and the conduct of the state thereupon, since the commencement of the previous action, places the defendants in a position to urge other and additional acts in could have been urged against the maintenance of the other. support of the second ground of nonsuit to those which

To the complaint in the former action a demurrer was interposed by the defendants, assigning three grounds, viz.: " First. That there is a defect of parties defendant, viz.: That the persons alleged to have combined and confederated with said defendants should have been named, and should have been made parties defendant. Second. That several causes of action have been improperly united. Third. That

the complaint does not state facts sufficient to constitute a cause of action." This demurrer was argued at a special term of the supreme court held by Mr. justice MILLER in the city of Albany, on the 2d day of June, 1870. An order entered upon the same day recites and declares: "This action coming on for argument upon the demurrer therein to the plaintiffs' complaint, and after hearing Sanford E. Church, of counsel for defendants, and Marshall B. Champlain, attorney-general, for the people, it is ordered that judgment be given for the defendants upon said demurrer, with leave to the plaintiffs to amend within twenty days upon payment of costs."

After the decision in favor of the defendants upon such demurrer and the filing of the original order just given, and its entry upon the minutes of the court, no further proceedings were had in said action until the year 1872, when Mr. Barlow, who had succeeded Mr. Champlain as attorney-general of the state, appealed from such order to the general term of the supreme court. That appeal was, on affidavits duly served by defendants, and on motion made in their behalf, on the 7th day of May, 1872, dismissed by the general term. On appeal from such order of dismissal to the court of appeals, the action of the general term was sustained, upon the ground that the parties to the action had agreed to be bound by the decision of the special term, and the plaintiffs had effectually waived all right to appeal. (See opinion of the court of appeals in 52 *N. Y.*, 310, and also that of the present judge, delivered upon a motion made during the progress of this trial to set aside the judgment entered in the action.) After the decision of the court of appeals, and in March, 1876, a formal roll, containing all the proceedings, pleadings and papers in the action, and ordering judgment in favor of the defendants upon the demurrer, without costs (the right to costs having been waived upon the stipulation of the plaintiffs not to appeal from the order of the special term), was duly filed; and such judgment roll and original

order sustaining the demurrer are in evidence upon this trial. The effect of that judgment upon the present action is the first question which the motion for a nonsuit presents.

The judgment of a court of competent jurisdiction upon a question directly at issue between parties, unless reversed, forever concludes and estops all parties to the action and those in privity with them, from questioning its accuracy or justice in another action. This rule, so essential to peace and repose, and so preventive of endless and vexatious litigation, is also so firmly rooted and grounded in every enlightened system of jurisprudence that it is at once conceded, and has not now been questioned. That this principle is fully applicable to a judgment rendered upon a demurrer, the plaintiffs likewise concede, and the authorities are abundant to justify such concession (*Bouchaud* agt. *Dias*, 3 *Denio*, 238; *Hunt* agt. *Terrell*, 7 *J. J. Marsh.*, 67; *Wilson* agt. *Ray*, 24 *Indiana*, 156; *Ferguson* agt. *Couster*, 8 *Georgia*, 524; *Gray* agt. *Gray*, 34 *Georgia*, 499; *Perkins* agt. *Moses*, 16 *Ala.*, 17; *Robinson* agt. *Howderd*, 5 *Cal.*, 428; *City Bank* agt. *Waldon*, 1 *La. Ann.*, 4). While the counsel for the plaintiffs do not deny the general propositions we have stated, they nevertheless urge that as the demurrer specified three grounds, judgment might have been given upon one or both of the first two, which did not reach the merits of the action, and not upon the third, which did, and therefore it does not appear that a court of competent jurisdiction has ever decided in an action against these defendants or any of them, that the alleged acts set out in the complaint afforded to the plaintiffs no ground of action upon the contract, norre dress and compensation for the damages which they have sustained in its performance or by its fulfillment. Is this proposition sound, and do not the order and judgment, presumptively at least, show that the merits of the case were in fact determined? There was but a single demurrer, though it was based upon three grounds. It was, according to the order and judgment, "*the* demurrer" which came on for argument at the special

People agt. Stephens.

term, and it was "upon said demurrer" that judgment in favor of the defendants was given. It was sustained, not in part but as a whole, and that could only be done by reaching a conclusion unfavorable to the plaintiffs upon every issue which it presented. It does not seem to me to be either forced or strained reasoning which thus concludes, but quite the contrary. It is scarcely to be for a moment argued that the learned attorney-general, who presented this case for the plaintiffs, would have been so careless or obtuse as to permit the order to be entered in this form unless he well understood that the decision went to the very core of the action. So to suppose would be to condemn the wisdom of the popular will, which made him the attorney of the state and the people's mouthpiece in the judicial tribunals. Do the authorities conflict with this view? Let us examine them.

In *Estep* agt. *Larsh* (21 *Indiana*, 190) the record did not show the grounds of demurrer; and as it did not appear that either went to the merits the estoppel was not sustained.

In *Birch* agt *Funk* (2 *Metcalfe* [*Ky.*], 444) the petition, to which the demurrer had been sustained, omitted many facts essential to the relief demanded, and this was held to be no bar to a second which contained them.

In *Griffin* agt. *Seymour* (15 *Iowa*, 30) there were two grounds of demurrer stated: "1. For the reason that there was a misjoinder of parties. 2. That the petition did not show such a state of facts as would entitle the plaintiff to recover." The demurrer was sustained, but upon what ground does not appear. The plaintiff appealed from the ruling of the district court, and upon the hearing in this court the judgment was affirmed. By referring to the opinion (*see* 10 *Iowa*, 223) it will be observed that this court held that there was a misjoinder of parties, and that in this respect the demurrer was well taken. The question presented by the second cause of demurrer does not appear to have been raised, or at least passed upon." To this statement of facts, copied from the reported case, the remarks of BALDWIN, C. J., in his

opinion, need only be added: "It is not to be presumed," he says, "that the court would pass upon the merits of the case, after having determined that the proper parties were not before him, and that a judgment could not be rendered in that form of action."

In the most, if not all, of the other cases cited by the plaintiffs' counsel it did not presumptively appear that the point involved in the action sought to be maintained had been decided in the former. The most that could be said in favor of the estoppel was, that the record was not inconsistent with the decision of the question — it might or might not have been determined. *Lawrence* agt. *Hunt* (10 *Wendell*, 80) is one of that character. It was an action for the non-delivery of wheat, and a former judgment was pleaded in bar. In the first action the defendant in the second had prosecuted the plaintiff in the latter for wheat, rye and corn sold and delivered. The claim for the wheat had been resisted, in part at least, upon the ground that the contract was with Lawrence alone. "Hunt had a verdict, for what amount does not appear from the case." The plea was overruled because it did not appear that the verdict covered the wheat, *non constat*, but the jury predicated the whole thereof upon the rye and corn, and hence there could be no estoppel. This differs very widely from a case in which the judgment professes to cover every point, as we have endeavored previously to show. It was the demurrer, the whole of it, which the order professed to sustain.

The limits of an opinion forbid a critical examination of every case cited by the learned counsel for the plaintiffs upon the argument. They will be found, however, easily explainable upon the principle we have stated, *i. e.*, that it did not presumptively appear that the question involved in the second suit was decided in the first. A very large number of cases sustaining the doctrine which we have stated can also be found. A few, and only a few, of them are *White* agt. *Simonds* (33 *Vermont*, 178); *Foote* agt. *Gibbs* (1 *Gray*, 412);

*Jennison, Treasurer,* agt. *Inhabitants of West. Springfield* (13 *Gray,* 544); *Day* agt. *Vallette* (25 *Indiana,* 42); *Champion* agt. *Plymouth Con. Society* (42 *Barbour,* 441); *Burwell* agt. *Knight* (51 *Barbour,* 269); *The Yonkers and New York Fire Insurance Company* agt. *Bishop* (1 *Daly,* 449); and *Sheldon* agt. *Edwards* (35 *N. Y.,* 279). We should, did not a recent decision of the supreme court of the United States render further discussion unnecessary, endeavor to show that by these authorities principles decisive of the question under consideration are abundantly settled. The case of *House* agt. *Mullen* (22 *Wallace,* 42), not cited by counsel on either side during the argument, is, however, so directly in point that the counsel for the plaintiffs would not, had attention been drawn to it, have pressed the discussion, and renders the citation or examination of any other authority unnecessary. In that case there was a demurrer to the bill in chancery which set up several grounds, some reaching the merits of the action and others not. The decree in the court below declared: "This cause coming on, etc., ＊ ＊ ＊ it is considered by the court that the said demurrer of the defendants ＊ ＊ ＊ be sustained," and the reporter calls attention to the fact that the dismissal of the complaint, for which the order also provided, "was general and absolute — not one for error or defect of parties, or without prejudice." On appeal to the highest legal tribunal of the nation it was reversed for the reason that as the decree stood it would bar another suit. Judge MILLER (*pages* 46, 47), after declaring "there are grounds stated in the demurrer which would, if sustained, be a bar to any other suit," says: "It does not appear by the decree, or by the order sustaining the demurrer, on which of the grounds set out in the latter it was sustained, or on what ground the bill was dismissed. As the record stands this decree might be pleaded successfully as a bar to any other bill brought by Eliza House or by Mary Hunter, her child, in assertion of her right to this lot, though we are of opinion that the only defect in the bill is that it shows no interest in

People agt. Stephens.

Mary Hunter, while it does show a good cause for equitable relief on the part of Eliza House. If the decree had dismissed the bill without prejudice, or had stated as the ground of dismissal the misjoinder of parties, or want of interest in two of them, we would have affirmed it ; but to prevent what may be a great injustice, we must reverse the present decree, and remand the case, with directions to allow plaintiffs to amend their bill as they may be advised, and if they fail to do this within a reasonable time to dismiss it without prejudice."

No language or argument which we may employ can render the decision just referred to more apparently applicable to the question now being considered — is the judgment upon the demurrer to be regarded as rendered upon the merits of the action — than the simple perusal of the case itself. It is useless, with this very high authority controlling us, to argue from the apparent frivolousness of the other grounds of demurrer, that the order sustaining it must have been based upon the third, which went to the merits of the action. Neither is it necessary to prove that the affidavits, upon which the order of the general term of this court dismissing the appeal from the order sustaining the demurrer was made, showing as they do that the order was decisive of the merits, and forming part of the judgment roll in evidence, are evidence upon this trial to declare the point on which the decision turned. The order as it stands must be so construed, and we have therefore a former judgment of this court forever and irreversibly (all remedy by appeal being lost) establishing that, as against the defendants Gale and Stephens at least, the state has, upon the identical facts found, no cause of complaint whatsoever. Nor is the effect of the former judgment upon this action in any wise weakened by the consideration that additional and subsequently accruing damages are now also sought to be recovered. The right to them is urged upon the same grounds — the same alleged frauds, the same alleged conspiracy — and these are

swept away. That upon which the cause of action depends has been adjudged to be insufficient, and as in *Bouchaud* agt. *Dias* (3 *Den.*, 238), which was precisely like this in the particular that other damages were sought than those involved in the first action in which the judgment upon the demurrer was rendered, judge BRONSON truly said, so we may now say : " The *matter* which the plaintiff now attempts to agitate anew is *res judicata.*" The estoppel in favor of Stephens and Gale is complete, and its effect upon the other defendants must next be considered.

Attention has already been drawn to the allegations of the complaint in this action, declaring that " the defendant Stephens assigned said contract to the defendant Gale (who represented as well himself as the defendants Belden and Denison) * * * and that said Gale and said Belden and Denison have performed said contract." The defendants Belden and Denison being in privity with the defendant Gale that the estoppel in their favor is just as effectual as in favor of Gale, will not be denied. The rule as to an estoppel created by a judgment is scarcely ever stated without including privies as well as parties. If the state, by reason of the former adjudication, is concluded from maintaining the suit against Gale, the right to sustain it against Belden and Denison will not be argued. It is claimed, however, that the former judgment affords no protection to the other defendants, because a party may fail to recover against one joint wrong-doer and yet succeed as against others. This is undoubtedly true when a case turns upon evidence given. The proof may be sufficient to justify a recovery against one, but insufficient as to another. Has it, however, ever been held that upon the same proof against two the same court would be justified in holding the one guilty of actionable conduct whilst the other was not ? The tribunal which would administer justice upon any such principle would deserve to be stripped of its judicial functions, and be condemned to eternal infamy.

All the acts of the defendants Gale and Stephens set out in the complaint in the former action, and which are identically the same with those contained in the complaint in the present, are charged as done in confederacy and combination with others, those others being the present defendants, not then sued ; and it was of those acts, ·then and now charged, this court gravely and solemnly decided and adjudged, in the language of the demurrer, that they were not "sufficient to constitute a cause of action." If they were not then, are they now ? Has their color or complexion changed with the lapse of years, or must this court change its view of the same facts because performed by parties now for the first time named, though then included as co-conspirators and confederates ? Stephens, Gale, Belden and Denison were, so to speak, the principal conspirators. It was that which they obtained which worked the alleged injury and damage to the state. The others were simply their aiders and abettors. When it has been judicially declared that those who have received the profits of the acts, and who also helped to do them, are not amenable to the state by action, it must necessarily follow that their mere aiders in those acts can be no more amenable. When the act of the principal has been judicially declared to be no crime, the conviction of the accessory would be a legal impossibility ; and so, when the former judgment requires us to hold that Stephens, Gale, Denison and Belden have done nothing which gives a cause of action to the state, we must necessarily be confined to the same rule when we judge of the same conduct, and acts committed by others in their aid. The former judgment may have been erroneous, and might, perhaps, have been reversed. It stands, nevertheless, to-day uttering the law which must control our action in regard to all these parties. It is founded upon no technicality, no legal quibble, but rests upon the great conservative principle, that litigation must cease with an unreversed judgment. What that settles is forever settled. This, order and quiet require ;

and when we remember that the state has, by it agent duly authorized (*People* agt. *Stephens and others*, 52 *N. Y.*, 306, 309, 310), agreed, for a consideration, to be bound by a judgment of this court, the estoppel of the judgment is supplemented by the agreement. Public policy and good faith both concur in demanding that this present suit cannot for this reason be maintained.

Though we have reached the conclusion that this action cannot be maintained, for the reason that it is barred by the judgment in the former, the gravity and importance of the case, and the public interest therein, require us to examine the second ground for a nonsuit, which, upon the undisputed facts, as defendants claim, presents this question : When a contract for work and labor has been let, after an advertisement for proposals, and a party has obtained it who has illegally conspired with others to suppress bids, thus securing a larger price than he could otherwise have procured, can the person who has the work done, with full knowledge of the conspiracy, require the other to proceed in its performance ; and when the contractor has done just what he was required and compelled by the other to do, and received just and only that which the other, with full knowledge, voluntarily, and without even a protest, paid, recover alleged damages sustained by its execution which he has thus himself compelled, and thus voluntarily incurred ? And this question, perhaps, involves still another, which is this : Does the state, in the application of the rule which the former question involves, occupy a different or better position than any other party ? These questions will be separately considered.

The counsel for the people contend that when a contract for work, labor and services has been procured by an illegal and unlawful combination to put up the price, the party for whom the work is done can, with full knowledge of such combination, require and demand its performance, voluntarily and with full knowledge pay the stipulated price, and then in an action recover his damages ; which, of course, is

the difference between the price which the contract calls for and the sum for which it could have been let had such combination not existed. The reasoning in support of this position is based principally upon the authority of *Allaire* agt. *Whitney* (1 *Hill*, 484). In that case Allaire had hired of Whitney certain premises in the city of New York, and which he was induced to lease upon the "fraudulent representation of Whitney, that the lot comprehended a certain other parcel of land which turned out to belong to the corporation of the city of New York." Allaire discovered the fraud before the commencement of his term. He did not repudiate the contract but took possession of the premises, and on being sued for the rent reserved in the lease claimed by way of recoupment the sum which he was compelled to pay for the use of the premises, the possession of which the lease failed to secure. This case (*Whitney* agt. *Allaire*) will also be found in 4 *Denio*, 554, and 1 *Comstock*, 484. The ground of that decision will be found to be that the lease made the contract an executed one, just as much executed as the sale and delivery of a horse with a warranty. In such a case a party is not compelled to repudiate, but may retain the property and sue upon the contract of warranty. It is true that when the case was before the court of appeals (1 *Comstock,* 305) judge Gardiner expressed the opinion that the same principle would apply to an executory contract, but that question was not then before the court, and all the judges concur in holding that as the lease when signed conveyed a present interest in the premises, it was an executed contract. The judgment was sustained in the court of last resort by a tie vote ; and so far as it enunciates a principle applicable to executory contracts is now of doubtful authority (*Ilion Bank* agt. *Carver*, 31 *Barbour*, 230 [*see page* 236] ; *Reed* agt. *Randall*, 29 *N. Y.*, 515 ; *The G. M. Co.* agt. *Allen*, 53 *N. Y.*, 515 ; *Gurney* agt. *Atlantic & Great Western Railway Co.*, 58 *N. Y.*, 358 ; *Osborn* agt. *Gantz*, 60 *N. Y.*, 540). There is, however, in my judgment, a wide difference between the

case even of an executory contract of sale, when there is an express contract that the goods shall be of a particular quality, and a contract for work and labor to be performed in the future, the sum agreed to be paid for which was founded upon the supposition that the offer of the labor was at the best price to be obtained after fair competition, when in fact it was at a price which had been fixed by an unlawful combination which prevented such competition. This is apparent from the reasoning of judge PECKHAM, in *Day* agt. *Pool* (52 *N. Y.*, 416), in which, by a majority of one, the court held, that in an executory contract, the buyer might retain his goods and rely upon the warranty, but since again questioned to some extent in some of the cases above cited. The ground of the recovery (if at all) is, that when an article is delivered upon an executory contract, the buyer cannot always examine, and has, therefore, the right to take the property and rely upon the seller's contract to make good any deficiency. When the contract, however, relates to future services, and was secured by practices heretofore mentioned, the gravamen of the action is, that the party making the contract has been deceived, and acts in ignorance of the combination. The complaint in the action on trial proceeds upon this theory. Whatever plausibility there may be in holding that a person may rely upon an express agreement to make good any deficiency in an article sold, that reasoning fails in its applicability to a question like that with which we are dealing. Will it be argued that if A., when he accepts the contract of B. to do work for him in the future, knows that the offer is exorbitant, and that others will do it cheaper, and with such knowledge accepts the proposition, that he has any cause of complaint against B. which will give him any standing in court? The unlawful combination only works injury when the party who directs the work is deceived into an acceptance of a proposal and acts upon it. It is the supposition that a price which is the result of an advertisement for proposals is the best to be obtained, and the deception which that imposes, which gives

the right to sue. When the party is not deceived, but enters into the agreement with perfect information that others are willing to take the work at a less price, he is not deceived. Nay, if the agreement be in fact made, but not executed, and full information is obtained of the unlawful combination, can the one require the other to do him an injury by its performance, and then recover damages for acts which he has himself ordered, or seek compensation for injuries which are self-inflicted? This question seems to answer itself, and the rule applicable is obvious. In *Selway* agt. *Fogg* (5 *Meeson & Welsby*, 83), it was held: "When A. engaged to carry away certain rubbish for B. at a specified sum, but found, upon commencing his work, that B. had made fraudulent representations as to the quantity of rubbish, but, nevertheless, went on with the work, and then sought to recover more than the sum specified in the contract, it was held that by going on with the work he had waived the fraud, and could not recover except upon the special contract." The same doctrine is contained in the *S. & S. R. R. Co.* agt. *Rowe* (24 *Wendell*, 74). There the defendants sought to charge a larger price for the transportation of coke than the agreed price, because there had been a willfully false statement as to the distance which the article had to be carried in the city of New York, and of it judge BRONSON said: " But waiving this consideration, and assuming that he was intentionally misled by the representations of Costigan, though there is no evidence of that fact, yet, after the bargain was concluded, and after Teall & Co. saw where the coke lay, they elected to go on with the contract, and, having done so, they are bound by it in relation to the rate of compensation (*See Lloyd* agt. *Brewster*, 4 *Paige*, 537). If the alleged misrepresentation had related to some other matter, and the truth had not been discovered until after the performance of the contract had been commenced, a different question would have been presented. But when a party has discovered what he deems to be a fraud, before he has

entered upon performance, he must then decide whether he shall stop short or go on with the contract. He cannot say this is a good contract for the purpose of authorizing me to do the work, but it does not bind me in relation to the rate of compensation. By going on, Teall & Co. affirmed the contract, and they and their agents are bound by it. No case was mentioned, and none, I think, can be found, which sanctions a different doctrine." These cases are both cited in *Whitney* agt. *Allaire*, and their authority fully recognized. The principle that a party cannot recover who has not been deceived, in a case where fraud is the basis of the action, is too well settled, and rests too plainly in reason to be questioned.

A party who is not deceived into an agreement to pay a large price for work, by means of a conspiracy to obtain it, has no redress. Neither has one any redress, whatsoever, who makes it in ignorance of the fraud, but who compels its performance with full knowledge. The party guilty of the illegal act must proceed ánd perform according to his promise, and can interpose no objection — he is powerless. Under these circumstances, the other compels him to proceed, knowing every fact. The damages are not only avoidable, but they are compelled to be inflicted ; and to permit a recovery would be very much like allowing a man to recover for a battery upon his person which he not only directed to be committed, but which he actually compelled. The cases are, in my judgment, exactly parallel.

In addition, then, to the distinction heretofore pointed out between an action founded upon an executory contract of sale, or that of *Whitney* agt. *Allaire*, where there is a positive affirmation of fact, and one like the present, based upon the consideration that the former rests upon an independent promise, and the latter upon an allegation that the plaintiff was deceived in entering into the contract, by the supposition that the price was a fair one, because fixed by honest competition, which must fail when the party is shown to know that

People agt. Stephens.

his price is exorbitant, and that others will do it for less, there is another still more marked, which though involved in the argument already made, should perhaps be separately and distinctly stated. In the case of an executory contract for the sale of goods which are to be of a certain quality, the buyer simply accepts as a *pro tanto* fulfillment what the seller in the professed execution thereof delivers, relying upon the promise to make good the deficiency, and this is also true of *Whitney* agt. *Allaire*. In neither is any thing done which puts the buyer in the one instance, or the tenant in the other, in the position of ordering the further act which accomplishes the injury. In the one the party suffers loss from that which he never ordered, and against which he had made a positive agreement. In that for future work and labor, the price for which has been fixed by an unlawful combination, and which is known before the work is ordered to proceed, or compensation paid, the party so ordering and paying has been an active contributor to his own injury, and has himself winged the dart which inflicts the wound. In the one the injury is complete by the voluntary act of the party in default, in the other the consummation of the injury is enforced by the party making the complaint. Between them there is no parallel, and no train of thought which demonstrates a plausible cause of action in the one can furnish any possible ground for the maintenance of the other. In *Whitney* agt. *Allaire,* as the lease conveyed an interest in property which was less in extent than that to which the party was entitled, he sustained a present loss, which a refusal to enter the premises leased would not have made good. For those damages he had an immediate right of action. In the case before us the injury is accomplished by the performance of the contract only, and the payment of the large price for which it stipulated. A refusal to go on was the only appropriate remedy, for with the fulfillment of its terms the damage is sustained. The actual fulfillment of the agreement according to its terms is exactly what the party in

the one instance needs, and the acceptance of its partial fulfillment as good *pro tanto*, whilst insisting upon a full compliance, can be no waiver of any thing.   In this the carrying out of the agreement is the thing to be avoided, and when the party complaining directs and requires its fulfillment, he stands before the court asking compensation for his own folly, and redress for a grievance which he has himself created.   In the one case the party asks damages because the other has not fulfilled the agreement; but in the other, which is this, he asks redress because it has been fulfilled, a redress to which he is not entitled, because he has himself directed such fulfillment.

Thus far we have discussed the question upon the theory that the dealings were directly between the parties to the contract.   If the one for whom the work is done acts through an agent, does any different principle apply?   If an agent be authorized to receive proposals and contract for work, does not this power necessarily carry with it the right to decide every question pertinent to the making thereof? It surely does, for the authority conferred upon an agent to do an act is "always construed to include all the necessary and usual means of executing it with effect" (*Story on Agency*, sec. 58).   The party intrusted with such a power is chosen, not because he is a machine, but a man with eyes to see and judgment to exercise.   When the question comes as to the propriety of making the agreement, his principal expects that he will consider every point bearing upon the expediency of the act which he is to do.   This right to consider and determine, necessarily involves the power to bind the principal by the decision when made.   Knowledge of the agent is knowledge of the principal, and the acts of the former, when in good faith, bind the latter (*Joslin* agt. *Cowle*, 52 *N. Y.*, 90; *S. C.*, 56 *id.*, 626).   To illustrate: Suppose A. is sent by B. to a book auction to buy a book. The article is struck off to him at the price of five dollars. Before paying the sum bid, C. informs him that he had been

employed by the auctioneer to run up its price, and had so done. In such a case A. has undoubtedly the power to refuse the article and throw up the bid. . If, however, instead of so doing he elects to take the book and pays the money, will it be argued that B. could sue and recover the difference between the price paid and the sum for which it could have been purchased had not the article been run up by the by-bidder? Does the question need argument?

In the further discussion of the point under consideration, we are next to see whether the principles enunciated are applicable to the plaintiffs, the people of this state. It is well to premise that discussion with the statement, that there is no allegation of any fraud or collusion between the defendants and any officer of the state. That is neither averred in any pleading, supported by any evidence, nor claimed in any way. The cause is to be decided upon the theory that all official action has been honest, every act in good faith, and every thing done by the state's agents for the best interest of their principal so far as they could see. Now, what have they in good faith done?

The contracting board of the state had knowledge, before they executed the contract, that other parties were willing to do the work at a price less than the Stephens bid called for. The informal bids, rejected because they were informal, but not required to be refused for that reason, so informed them. They also knew that the proposal was too high, for it was first rejected for that very reason; but, subsequently, it was accepted, and the contract signed.

In about a month after the contract was signed the legislature of the state had knowledge sufficient to put them upon inquiry, and as early as January 30, 1867, the resolution organizing a committee of inquiry was introduced, and had passed both houses on February 7th, 1867.

April 19, 1867, a joint resolution was adopted by the two legislative branches requiring the contractors to proceed in the execution of the contract, and directing that the "canal

commissioner in charge of the eastern division discharge his duties."

As early as March 11, 1867, certainly, and perhaps before that, the canal board had accurate information of the alleged conspiracy, and the officers of the state ordered the work to proceed, and compelled its performance for the whole five years.

On January 1, 1868, the joint committee of the legislature made its report, and such report fully established every fact relied upon in this action. During the same session a law was passed (*Laws of* 1868, *chap*. 869) authorizing the attorney-general to commence suit to annul the contract, among others, which is involved in this action.

By chapter 55 of the Laws of 1870, the contracting board was abolished, but it declared that its abolition should not "invalidate the contracts heretofore made, or discharge any of the contractors from the duties and obligations imposed by such contracts, or the said laws." By the same act the canal board was authorized, "whenever they shall deem it for the interests of the state to cancel and annul any contract or contracts for repairs of the canals heretofore made, by a resolution to be entered in the minutes of the said board."

With entire knowledge the work was executed. Year by year a report from the canal commissioner in charge declared the sum due the contractors. Appropriations to pay were regularly made by the legislature, and payments made by the officers who were charged with that duty. The proof conclusively establishes that when the contract was executed the contracting board was not deceived by the supposition that the accepted bid was the lowest price to be obtained after a fair competition; that the officers of the state in charge of the work, and its legislature, when its performance was required were fully informed of the alleged fraud; that the law-making power of the state, with accurate and complete knowledge, affirmed the contract by express law, and year

People agt. Stephens.

by year placed the money of the state in the hands of its officers to be paid thereupon; and that such money and every dollar of it has been paid, not only without any mistake of facts, but with full, complete and accurate information. With these facts fully proven has the state any redress? If a private citizen, upon a similar state of things, would be concluded, is not the state also concluded? Have its tribunals rules of action applicable to all other litigants, and different and more favorable ones for the commonwealth? If this is so then judges are now, it is true, no longer to express the mere will of the crown, but instead thereof they have become creatures who are arbitrarily to decide in favor of the people, whose officers they are.

It is true that no act which an officer of the state illegally performs can bind it. All have powers defined by law, and no one can be deceived as to the extent thereof, but within those actually conferred, their action is as obligatory upon the parties whom they represent, as that of the agent of the private citizen. Will it be argued that the contracting board was a mere machine, and had no judgment to exercise, and no duty involving reflection to discharge? Were they absolutely bound to accept the lowest bid proffered under their advertisements, though they knew by it the state would lose untold millions? Are all its officers to direct the execution of every agreement, though they may know it to be rotten with fraud and seething with iniquity? Where the entire law-making power of the state, the legislature and the governor, has declared and affirmed a contract as valid, are the courts to give no efficacy to the law so declaring it? When appropriations are made year by year, and the money placed in official hands for disbursement, is there no intelligent duty to be discharged, no discretion to refuse payment where the claimant is not justly and honestly entitled to it? If these questions are answered in the negative, we have, it is true, the machinery of government, but no intelligent hand to guide its movements, and no heart to distribute by its pulsations,

the vigorous blood of honest manhood through its various parts. If they are answered in the affirmative, then it necessarily follows that, if officials can, within the scope of their powers, think and decide, those for whom they so think and decide must be bound by such decision. Without such a principle governing official action who is safe in his dealings with the state? That which is done to-day will fall to-morrow, according to the whim or caprice of changing authority. The state selects, or is supposed to select, its agents for their intelligence, integrity and fitness. What becomes of this theory before arguments which deny judgment, right of intelligent action, and confine all official conduct to the narrow ruts of express legislation? Under it the thief would prosper and the honest man would be plundered; no check could be placed upon dishonest dealers with the state, and no stop put to the performance of an unlawful and fraudulent contract. To such reasoning I cannot subscribe. The power to do an act involves that of every thing which is essential to its rightful and proper discharge; and if it does, it also follows that every thing done under the present contract was binding upon the state. Its officers were not deceived in making the contract; its agents were not deceived in ordering its performance; its law-making power was not deceived in making its appropriations to pay the money earned according to its terms, and its disbursing officers were not deceived when such money was paid to the contractors claiming it. The contract has been signed, executed and performed with full knowledge, and it would be preposterous to hold that when the state has for five long years required every act to be done which has been done, that it can have any redress for action which it has itself compelled.

In reaching the conclusion that the plaintiffs must be nonsuited, I have not lost sight of the suggestion that unless my views are clearly against the plaintiffs, the cause should be sent to the jury upon the questions of fact. They are clear, and impressions reasonably free from doubt made upon the

People agt. Stephens.

argument have been strengthened by careful study and reflection. There would be no propriety in the evasion of the responsibility thrown upon me, and to waste, in my opinion, further time and money in the trial of this cause. If the higher courts take a different view of this case from that entertained by me, the time consumed in taking the evidence upon this trial will not be lost, as counsel can by agreement read it upon another. It is better to have the law of the case settled at this point, than after longer delay and more expenditure.

The motion for a non-suit is granted.