M. L. Walker et al., Plaintiffs in Error, v. Barnett Bros., Defendant in Error.

Gen. No. 16,391.

1. SALES—*acceptance which cannot afterwards be repudiated.* In an action for the contract price of a car load of grapes, the defendant, by making inspection through his agent and taking

away a wagon load, will be held to have accepted them so that he cannot afterwards repudiate and hold the goods for sale on plaintiff's account.

2. SALES—*immaterial that inspection is not thorough where there is sufficient opportunity.* Where the buyer has a reasonable opportunity for inspection before acceptance and breaking of bulk, he cannot complain that inspection was not thorough.

Error to the Municipal Court of Chicago; the HON. W. H. HINE-BAUGH, Judge, presiding. Heard in this court at the March term, 1910. Reversed and judgment here. Opinion filed November 18, 1912.

FREDERICK S. BAKER, for plaintiff in error.

FREDERICK H. TRUDE, for defendant in error.

MR. JUSTICE BROWN delivered the opinion of the court.

The judgment attacked by the plaintiffs in error in this cause, who were also plaintiffs below, is in their favor and against the defendant in error. But it is for $313.12, and the plaintiffs maintain that it should be for $430.08, which was the full amount of the claim for which the suit was brought. The judgment was rendered by the Municipal Court of Chicago, in which the cause was tried without a jury. The defendant was sued in that court for the contracted purchase price of a carload of grapes. The carload consisted of 6144 baskets, the purchase price being seven cents a basket. The grapes were sold to Barnett Bros., a corporation, by the plaintiffs, a copartnership under the name of The Walker-Boals Company. They were sold through a broker in Chicago f. o. b. Naples, New York. They were to be "Fancy labeled Catawbas," and it was agreed that they should be subject to inspection in Chicago.

The car was loaded at Naples by the Walker-Boals Company, who purchased the grapes in wagonload lots from various growers. Mr. Boals, a member of the firm, testified that all the 6144 baskets were of the first-

class quality of grapes in sound condition; and that he personally inspected and passed on each wagonload before purchasing the same and saw the grapes loaded into the car. Mr. Walker, the other member of the firm, says he supervised the loading, and that the grapes were loaded in the car as fast as purchased. He says: "The examination made by me was after the car was loaded, when I checked up the car, and those examined were found to be Catawbas in first-class condition and sound."

Joseph Widner, another witness for the plaintiff, testified that he had been engaged all his life in handling grapes and was engaged by the plaintiffs to load these grapes into the car; that he personally loaded the entire car and inspected each wagonload while he was loading it in the car; that the grapes were all of first-class quality and sound condition, and that there was no appreciable difference in the grapes placed in any part of the car.

The car after being thus loaded was sent to Chicago. It left Naples on November 13, 1909, the day of the sale and the loading, and arrived in Chicago on the morning of November 18, 1909, on the Wabash Railroad.

William Nagle, an employee of the defendant corporation, who had been inspecting cars of fruit for it for eight or nine years, immediately inspected the grapes at the order of the defendant. He testified that he examined fifteen or twenty baskets. He says: "The grapes were piled up about four feet high. I opened the car and got in. I looked at the grapes north, south and west, and all the grapes I examined I found in good condition."

Nagle returned to Barnett Bros. and told Mr. Barnett, the president of the defendant corporation, that the grapes were all right. Thereupon Barnett Bros. sent down a wagon to the car for a load of the grapes. One wagonload, about 500 baskets, was taken to the store of Barnett Bros. on November 18, reaching there about noon. Fifty baskets, which had been

sold to the Shafton Company before arrival, were at once delivered to that Company, and other baskets were sent to a buyer in Evanston. Mr. Shafton of the Shafton Company met Mr. Barnett of the defendant Company and expressed dissatisfaction with his purchase on account of the quality of the goods. Mr. Barnett directed their return by Shafton, and says that there were mouldy grapes among them. He further says: "I immediately told the boys to pack them" (the whole wagonload) "together and set them aside, not offer them for sale, and telephoned Mr. Case, the broker, that we could not accept the car of grapes, that they were there subject to his order." Those baskets sent to Evanston, Mr. Leffler, the secretary of Barnett Bros., says he ordered returned and that they were returned. This seems inconsistent, however, with the statement and receipts introduced in evidence by the defendant. In this statement the receipt of $25.00 from a sale of twenty-five boxes on November 18th is noted.

Mr. Barnett also appears to have requested Mr. Shafton and two other fruit dealers having expert knowledge of grapes to look at the grapes brought in this first wagonload on the 18th of November to the store of Barnett Bros., and they confirm his statements and those of Mr. Leffler that the grapes taken as a whole were not of first quality, but poor, in some cases mouldy and not properly to be described as "fancy labeled Catawbas."

The Walker-Boals Company drew on Barnett Bros. for $430.08 on November 13th, the day of the shipment. The draft was held in Chicago until the arrival of goods, but on the 22nd was refused and ordered returned by Barnett Bros., as shown by memoranda on its face and back.

In the meantime Barnett Bros. requested permission of the Railroad Company to return to the car the grapes taken out and reject the car as not up to contract. The Railroad Company refused to permit this without a bond of indemnity. Thereupon Barnett Bros. on No-

vember 20th telegraphed to the Walker-Boals Company.

"Grapes here. Subject to your order. Quality not as ordered. Will handle for whomsoever it may concern unless disposition is given within twenty-four hours."

To which telegram the plaintiffs replied by wire on November 22nd: "Its your car of grapes, please pay draft," and on the same day wrote the defendant confirming their telegram and stating their view of the transaction, as follows:

"* * * This car was sold at 7c F. O. B. The stock was fresh packed and in nice condition at the time of shipment. * * * If there has been any deterioration in transit it is up to you to stand same, as they were your grapes from the time of shipment. On the other hand we understand that you sent your man to inspect the car and evidently found same all right at the time, as you drew out one load of same. It would seem to us as though this would constitute an acceptance of the car on your part."

The defendant company allowed the car to remain on the track after this for some time, but took eventually in instalments all the grapes from the car and sold them at various prices and at various times up to December 20th at an average price of 8¼ cents a basket. From the amount of the sales, $506.38, it then, on the theory that it was handling the grapes for the plaintiffs, deducted $142.63, which it had paid for freight, car service and cartage, and also $50.63 as its commission for selling. This left $313.12 which it admitted belonged to the plaintiffs. This was the amount for which the court below rendered judgment.

We think this was erroneous and that the judgment should have been for $430.08, as maintained by the plaintiffs.

We think that the breaking of the bulk and taking the goods by the defendant, after the inspection by its agent and employee, constituted an acceptance of them

which it could not afterward repudiate and hold the goods for sale on the plaintiffs' account.

If, as the defendant's affidavit of defense in the Municipal Court charged, the plaintiffs, in order to defraud the defendant, in loading said car placed at the door good grapes and in the interior poor grapes, there might be ground for the contentions of defendant, but there is no evidence of any such fraudulent conduct. The evidence is adverse to that hypothesis. The inspection may not have been a thorough one, but it was made by the defendant's agent according to his chosen method. The question is not whether there actually was a thorough inspection, but whether there was a reasonable opportunity for such an inspection before the acceptance and breaking of bulk. See, for example, Gaylord Mfg. Co. v. Allen, 53 N. Y. 515, which is but one of numberless cases stating this doctrine of the law of sales.

We think the judgment should clearly have been for $430.08. The cause was tried without a jury. We shall reverse the judgment of the Municipal Court and enter judgment here for that amount, with costs for the plaintiffs in this court and the Municipal Court.

*Reversed and judgment here.*