## WILSON v. MORAN.

No. 10028—Opinion Filed Feb. 8, 1921.

Rehearing Denied May 17, 1921.

(Syllabus.)

1. **Appeal and Error—Trial—Discretion of Court—Order of Proof.**

The question of the mere order in which proof is introduced at a trial rests very much within the sound discretion of the trial court; and unless it clearly appears that this discretion has been abused, to the injury of the complaining party, a reversal will not be ordered on this ground.

2. **Same—Burden of Proof and Duty to Open and Close—Sales—Defense of Breach of Warranty.**

In the trial of a cause, when the jury has been sworn the party on whom rests the burden of the issue must first produce his evidence, unless the court for special reasons otherwise directs, and in a case where the plaintiff sues for damages for a breach of contract for the sale and delivery at a stipulated price per bushel of blue grass seed, alleging that the defendant breached the contract by refusing to accept the shipment at the place of delivery, and the defendant admits in his answer that he refused to accept such shipment because the plaintiff warranted the blue grass seed to be of the kind and quality of that portion examined by the defendant at the time of purchase, and alleges in his answer that he examined the seed on arrival of the shipment and that he found the seed inferior in quality to that portion of the same examined by him at the time of the purchase, and for that reason alone he refused to accept the shipment, and where the plaintiff in his reply to the answer of the defendant specifically denies that he warranted the seed to be of a particular kind or quality, and alleges that the defendant had ample opportunity to, and did, fully examine the entire lot of seed at the time of purchase, and fully satisfied himself of the quality thereof, held, the trial

court did not abuse its discretion in holding that the burden of proof was upon the defendant, and directing him to open and close the case; and (b) where the record discloses that the defendant's entire defense was predicated upon the theory that the plaintiff warranted the quality of the seed, and no contention was made upon the trial by the defendant that the plaintiff otherwise failed to comply with the contract of the sale, further held, that the court conferred a benefit rather than an injury upon the defendant in ordering and directing that he assume the burden of his defense and that he open and close the same.

**3. Trial—Demurrer to Evidence —Consideration.**

The test applied to a demurrer to the evidence is that all the facts which the evidence in the slightest degree tends to prove, and all inferences and conclusions which may be reasonably and logically drawn from the evidence, are admitted, and the court cannot weigh conflicting evidence, but must treat that as withdrawn which is most favorable to the demurrant.

**4. Appeal and Error—Review—Questions of Fact—Verdict.**

In a law action tried to a jury this court will not weigh the evidence on appeal, but where there is any competent evidence reasonably tending to support the verdict, and the record presents no reversible error of law occurring during the trial, the verdict of the jury and the judgment of the court thereon will not be disturbed.

**5. Sales—Action for Damages for Failure to Accept—Instructions—Evidence.**

Record examined, and it appearing therefrom that there is competent evidence reasonably tending to support the verdict of the jury, and that the instructions of the court substantially correctly stated the law of the case to the jury, and otherwise there was committed no reversible error in the trial of the cause, the judgment of the trial court must be affirmed, and it is so ordered.

Error from District Court, Mayes County: Preston S. Davis, Judge.

Action by George Moran against James S. Wilson for damages for failure to accept seed under sale contract. Judgment for plaintiff, and defendant brings error. Affirmed.

Langley & Langley and John B. Turner, for plaintiff in error.

J. W. Sullinger and Campbell, Leahy & Brewster, for defendant in error.

JOHNSON, J. This is an appeal from the district court of Mayes county, Hon. Preston S. Davis, Judge.

On February 8, 1917, George Moran, as plaintiff, commenced this action against the defendant, James S. Wilson, to recover damages in the sum of $1,900.12, for the failure of the defendant to accept four car loads of blue grass seed, shipped by the plaintiff from King City, Mo., to the defendant at Paris, Ky.

The cause was tried to the court and jury and resulted in a verdict in favor of the plaintiff for the sum of $1,530.49, from which judgment the defendant has regularly appealed to this court.

For convenience, the parties will hereinafter be referred to as plaintiff and defendant, respectively, as they appeared in the trial court.

The plaintiff alleged in his petition that on or about the 15th day of July, 1916, he sold to the defendant his holding of stripped blue grass seed then on hand in his warehouse in King City, Missouri, the same being 4,721 2-9 bushels, at an agreed price of 90 cents per bushel, to be thereafter shipped to the defendant at Paris, Ky., amounting in the aggregate to the sum of $4,249.10, when the same was loaded on the cars; that the shipment went forward with draft attached to shipper's order, notify, bills of lading; that the defendant refused to accept and pay for same on arrival at Paris, Ky., and that after several days delay the same was returned to the plaintiff to King City, Mo., unloaded by him, and placed in his warehouse; and that by reason of the defendant's failure to accept the same as per contract, the plaintiff was compelled to pay freight on the outbound and inbound movements of the shipment in the sum of $529.22 each, and $106 demurrage, and expense of unloading the seed of $27.50, and suffered loss on account of the decline in the market in the sum of 15 cents per bushel, amounting to $708.18.

At the close of the evidence the plaintiff, on application to the court, was permitted to amend his petition to conform to the proof by striking out the item of $708.18, caused by the decline in the market, and in lieu thereof alleged damages for insurance paid, $35; for expense in loading the said seed when resold, $27.50; and for rent of warehouse for five and a half months, $75.00; decline in market of 5 cents per bushel, aggregating $215; making the total amount of damages claimed $1,545.49, instead of $1,900.12, the amount claimed in his original petition.

The defendant's answer consisted of a general denial, except in so far as allegations "are hereinafter admitted," and for a further defense alleged a breach of warranty of the quality of the seed sold. This part

of defendant's answer is quite voluminous, the essential portions of which are as follows:

"The defendant for further answer states that before and at the time the defendant and plaintiff undertook to enter into the verbal agreement for the sale of said blue grass seed by the plaintiff to the defendant at 90 cents per bushel, the said seed was (with the exception of 400 or 500 bushels hereinafter mentioned), stored in bulk in a section of plaintiff's warehouse at King City, Missouri, and that the said bulk of seed extended up and into the rafters at the top of the said section of said warehouse and that the only opportunity the defendant had of examining said seed was such examination as he could and did by climbing a ladder on the outside and going to the top of said warehouse and looking down on the top of said seed and that he could only see to examine what was on top, or within arm's reach from the top, and defendant states that because of the impracticability of making any other examination of said seed, the plaintiff, in order to induce the defendant to enter into said contract, stated and represented to the defendant that all of said seed was of the same kind, character and quality as the portion he could and did inspect from the top of said warehouse, saving and excepting 500 to 700 bushels which the plaintiff represented was all of the seed that was inferior to the seed at the top of said warehouse and which the defendant could and did inspect, and the plaintiff represented that the said inferior quality was at or near the bottom of said section of said warehouse."

He further alleged, in substance, the arrival of the seed at Paris, Ky., and his examination thereof, and that he discovered that the said seed was not as represented by the plaintiff, and his notifying the plaintiff that he would not accept the same, and concluded his answer with the following allegation:

"The defendant thereupon refused to accept or receive said seed and notified the plaintiff that he refused to accept or receive said seed and that the defendant refused to pay for said seed because of the plaintiff's said prior breach of said contract, and refused to honor or pay the draft mentioned in the petition for purchase money of said seed because of plaintiff's prior breach of said contract, and that on account of the defendant's refusal to receive or accept said seed the plaintiff reshipped said seed to King City, Missouri, as stated in the petition."

To this answer the plaintiff filed a reply, denying generally and specifically all the material allegations of the defendant's answer pleading a breach of warranty.

Soon after the commencement of the trial, and after counsel for plaintiff and defendant, respectively, had made their opening statements, which statements are not included in the record, the court announced "that the burden of proof in this case is upon the defendant, and that he shall, therefore, produce his evidence first and shall have the opening and closing of the argument in this case." To this action of the court the defendant excepted.

The defendant's assignments of error are as follows:

1. "The court erred in holding that the burden of proof was upon the defendant."

2. "The court erred in overruling defendant's demurrer to plaintiff's evidence."

3. "The court erred in excluding competent evidence offered by defendant."

4. "The court erred in giving to the jury instructions Nos. 2, 4, 5, 6, 8, 9, 10, 11, 14, and 16."

5. "The court erred in refusing to give instructions Nos. 1, 2, 3, and 4, requested by defendant."

6. "The court erred in permitting plaintiff to amend his petition, at the close of all the testimony and after the witnesses had been discharged from the rule."

7. "The court erred in overruling defendant's motion for a continuance after the petition was amended."

8. "The verdict of the jury is not supported by the evidence."

9. "The court erred in overruling defendant's motion for a new trial."

Counsel for defendant first argue in their brief the first assignment of error, which is that "the court erred in holding that the burden of proof was upon the defendant."

Revised Laws 1910, sec. 5002, is as follows:

"When the jury has been sworn, the trial shall proceed in the following order, unless the court for special reasons otherwise directs: First. The party on whom rests the burden of the issues may briefly state his case, and the evidence by which he expects to sustain it. Second. The adverse party may then briefly state his defense, and the evidence he expects to offer in support of it. Third. The party on whom rests the burden of the issues must first produce his evidence; after he has closed his evidence, the adverse party may interpose and file a demurrer thereto, upon the ground that no cause of action or defense is proved. If the court shall sustain the demurrer, such judgment shall be rendered for the party demurring as the state of the pleadings or the proof shall demand. If the demurrer be overruled, the adverse party will then produce his evidence."

In the case of Gower et al. v. Short, 36 Okla. 30, 127 Pac. 485, in syllabus paragraph 3 of the opinion, this court said:

"The question of the mere order in which proof is introduced at a trial rests very much within the sound discretion of the trial court; and unless it clearly appears that this discretion has been abused, to the injury of the complaining party, a reversal will not be ordered on this ground."

To the same effect, Standifer et al. v. Sullivan, 30 Okla. 365, 120 Pac. 624.

From an examination of the entire record, it is clear to us that the trial court did not abuse its discretion in directing the defendant to proceed first with the introduction of his evidence, and equally so that the trial court properly held that the burden of proof was upon the defendant. There was no contention made at the trial that the plaintiff failed to comply with the terms of his contract in the shipment of the said seed; nor that the price of 90 cents per bushel was not agreed upon; nor that the said seed failed to arrive at its destination in proper time; nor that the amount of the draft was in excess of the quantity of the seed sold; nor that the defendant refused to accept the seed; nor that he returned it to said plaintiff. The contentions of the defendant were that all of the seed was warranted to be of the same kind and character as that he inspected upon the top of the pile in the warehouse, and that he examined the seed on its arrival at Paris, Ky., and that the seed did not come up to the warranty, and that he therefore, and for that reason alone, refused to accept and pay for it; and all of the defendant's testimony, which was for the most part his own evidence, was in support of these contentions of his, and gave no excuse for his refusal to accept and pay for the seed except that it was not up to warranty.

In these circumstances we think it is clear that the court was correct in its holding that the burden of proof was upon the defendant, and granting him at the commencement of the trial the benefit of opening and closing the case.

The next assignment of error argued by the counsel for the defendant is, "the court erred in overruling defendant's demurrer to plaintiff's evidence." There is no merit in this contention. The plaintiff testified that the defendant had ample facilities for examining the seed at the time of the purchase and that he did so; that the defendant did not go up on a ladder to examine the said seed and only examined the top of the pile, but, upon the contrary, the plaintiff testified that he opened the warehouse door, which was 10x10 feet, and that the top of the pile of seed was only six feet high, and that the door was boarded up to that distance only, leaving four feet above the boards from the top of the pile of seed to the joist in the warehouse, and that the defendant entered the warehouse at the door, climbed up on top of the pile, examined the seed thoroughly, took a pitchfork and dug deep holes down into the seed at different places, going down into the holes and pulling out samples from the sides thereof, and examined the seed thoroughly, and that no request was made for a warranty of the seed, and that no warranty was made by him; that the defendant thoroughly inspected the seed at the time of the purchase; that the same was of the same quality and character throughout the warehouse as that on top of the pile, except perhaps some at the bottom in a certain part of the warehouse, which was of an inferior grade, and that the defendant was fully advised by the plaintiff at the time as to that; that he shipped the seed to the defendant in the way and manner agreed upon; that the defendant refused to accept it, and that he was compelled to pay the freight both ways and the demurrage and for unloading the same; that in February, when he sold the seed, he shipped it to Hall Bros., in Jacksonville, Ill., and that he paid the item of insurance, lost the use of his warehouse for four and a half months, and that the same was reasonably worth the rental of $15 per month, and that he sold the seed to Hall Bros. at 85 cents per bushel, losing at the rate of 5 cents per bushel on account of the defendant's failure to receive it at the purchase price of 90 cents per bushel, the aggregate amount of these items being the exact amount of the verdict returned by the jury.

As to the quality of the seed in the warehouse that the defendant examined and bought, the plaintiff introduced as witnesses every employe that handled the seed from the time it was mowed to the time it was shipped to Hall Bros. (it was sacked three times and unsacked twice); they all testified that the seed throughout was of the same quality and in the same condition as the kind of seed that the plaintiff alleged he sold to the defendant.

In these circumstances it cannot be maintained that a demurrer to the plaintiff's evidence should have been sustained. The trial court properly overruled the same.

The 3rd assignment of error argued is that the court erred in refusing to give instructions Nos. 1, 2, 3, and 4, requested by the defendant. There is no merit in this

contention. We have examined the instructions 1 and 2, being upon the question of warranty, which was fully and clearly covered by the court in his general charge to the jury. The requested instruction No. 3 went to the question of the plaintiff shipping to the defendant other and different seed than that which was owned by the plaintiff at the time of the alleged purchase and which was in the warehouse. That was not the issue in the case. No such contention was made by the defendant, and the plaintiff's testimony was full, clear, and explicit that he shipped the identical seed that the defendant inspected and purchased, and there was no evidence to dispute it. The 4th went to the proposition that if the defendant and his witnesses violated the law of the state of Kentucky in breaking open the cars and taking seed therefrom, that had nothing to do with this lawsuit. Nobody ever seriously contended that they committed a crime, that they broke into the car, or that such action in any way affected the rights of the parties to this lawsuit, and nothing upon that question should have been submitted to the jury, and the court did not submit the same. The court properly refused this requested instruction.

Counsel next argue specification 4, which is that the court erred in giving the jury instructions Nos. 2, 4, 5, 6, 8, 9, 10, 11, 14, and 16. We have examined these instructions, and find that they respectively contain a substantially correct statement of the law upon the different phases of the case, and that they are not subject to the criticisms of counsel.

Counsel next argue specification 5, error of the court in giving instruction No. 5, which was upon the question of how a contract may be rescinded, and copied practically verbatim the provisions of the statutes of this state. There was no error in this instruction.

Counsel next argue specification 6, error of the court in giving instruction No. 16, which was upon the measure of damages, and in which was likewise copied the statutory provision for the breach of an obligation arising from contract, stating what the measure of damages should be, etc. In this there was no error.

The defendant's other assignments of error have not been argued in the brief, and were therefore waived, and will not be considered.

We have carefully examined the entire record, and are clearly of the opinion that the verdict of the jury is supported by competent evidence, and that there is no preju-

dicial error of law shown in the record, and that the defendant had a fair and impartial trial, and that this case comes squarely within the rule announced by this court in the following cases: McCoy v. Wosika, 75 Okla. 3, 180 Pac. 967; Bunker v. Harding et al., 70 Oklahoma, 174 Pac. 749; Blasdel et al. v. Gower, 70 Oklahoma, 173 Pac. 644; Shawnee Nat. Bank v. Pool, 66 Oklahoma, 167 Pac. 994; C., R. I. & P. R. Co. v. Pruitt, 67 Oklahoma, 170 Pac. 1143—that in a law action tried to a jury this court will not weigh the evidence on appeal, but where there is any evidence reasonably tending to support the verdict and the record presents no reversible error of law occurring during the trial, the verdict of the jury and the judgment of the court thereon will not be disturbed.

The judgment of the trial court is therefore affirmed.

KANE, PITCHFORD, MILLER, and NICHOLSON, JJ., concur; HARRISON, C. J., and McNEILL, ELTING, and KENNAMER, JJ., dissent.

MILLER, J. (concurring). I concur in the opinion written by Mr. Justice Johnson for the following reasons:

The defendant in his answer made a general denial except as to such allegations as "are hereinafter specifically admitted." The answer then states:

"The defendant for further answer states that before and at the time the defendant and plaintiff undertook to enter into the verbal agreement for the sale of said blue grass seed by the plaintiff to the defendant at 90 cents per bushel, the said seed was (with the exception of 400 or 500 bushels hereinafter mentioned) stored in bulk in a section of plaintiff's warehouse at King City, Missouri. * * *

"The defendant states that he stated to the plaintiff that in entering into the contract, he would have to rely on plaintiff's representations as to the kind, character and quality of said seed, and that the plaintiff made and entered into said contract knowing that the defendant would and did rely upon plaintiff's said representation of the kind, character and quality of said seed, and the defendant states that in making said contract, he did with the full knowledge of the plaintiff rely solely upon the representation of plaintiff that the kind, character and quality of said seed was the same as the portion which the defendant could and did inspect at the top of the said warehouse, excepting the 500 to 700 bushels of inferior seed mentioned above. * * *

"The defendant states that the defendant was to and did furnish the plaintiff with bags to sack said seed for shipment and the plaintiff was to and did furnish the

defendant with the weights of said bags after the seed had been sacked therein, and that the defendant received these weights about the time the seed arrived at Paris, Kentucky, and before defendant unloaded the said bags of seed from the cars. * * *"

Defendant then states that he inspected the seed in the cars at Paris, Ky., and found the seed to be inferior in kind, character, and quality to that portion of the seed inspected in the warehouse at King City, Mo., and for that reason he refused to accept or receive the seed.

This answer admits the contract set up by the plaintiff, then defendant pleads, as a defense, a special warranty and the breach thereof by the plaintiff, as his excuse for not accepting the seed and to relieve him from liability to respond in damages.

The several items of damage set forth in plaintiff's petition were not seriously contested by defendant on the trial of the case, and the proof of these items was merely a formal matter as disclosed by the evidence.

Under the pleadings the material issue in the case was the special warranty, affirmatively pleaded by the defendant as a defense. The burden of proving a special warranty, or the affirmative of the material issue in the case, is always on the person pleading it.

"This was an action brought by Horace Fairbanks and others, plaintiffs, as payees of certain promissory notes executed by the defendant, Irwin. The defendant pleaded specially and circumstantially to the effect that the notes were given for the price of a certain brick-making machine sold by plaintiffs to defendant, that the machine was warranted to do good work, that the machine did not do good work, and that the consideration of the notes had failed by reason of a breach of such warranty. * * *

"Failure of consideration of the notes sued on was the only defense pleaded in the action. The defense consisted of affirmative averments of new matter, and under it the burden of the issue rested upon the defendant. In such case it was not error to allow defendant to open and close with the evidence and argument at the trial. * * *" Fairbanks v. Irwin, 15 Colo. 366, 25 Pac. 701, 702.

Baughman v. Baughman, 32 Kan. 538, 4 Pac. 1003; McDougall v. Walling, 19 Wash. 80. 52 Pac. 530; Hall v. Elgin Dairy Co., 15 Wash. 542, 46 Pac. 1049.

"In an action on a note, where the defendant by his answer and by an admission in open court conceded the execution and delivery of the note and its nonpayment, but defended on the ground of false representations, he was properly permitted

to open and close." Ogden Valley Trout & Resort Co. v. Lewis (Utah) 125 Pac. 687.

"The next error alleged is in refusing the defendants the right to open and close the argument. The court held that the burden of the only material issues in the case was on the defendants, and they should have been allowed to open and close the argument. This is the only material error we find in the case, but the right to open and close the argument to the jury is a valuable right, and should not be denied to the party who has the burden of the main issues in the case. The judgment of the district court will be reversed and a new trial directed." Degan v. Tufts, 8 Kan. App. 388, 56 Pac. 1126.

Merchison v. Nies, 87 Kan. 77, 123 Pac. 750.

The ruling of the trial court requiring the defendant to proceed out of order did not constitute reversible error.

I am authorized to say KANE and NICHOLSON, JJ., concur.

ELTING, J. (dissenting). The questions involved in this case we regard of sufficient importance to warrant an explanation of the reasons for our dissent.

One of the grounds assigned as error by the plaintiff in error is that the court below committed material error in instructing that the burden of proof was on the defendant below and plaintiff in error in this appeal, under the allegations of his answer. This is an action by the seller for damages for a breach of contract of sale and refusal, by the buyer, to accept goods sold, to wit, something over 4,000 bushels of blue grass seed. This seed was produced by the seller, and at the time of sale was stored in a couple of bins on the defendant in error's farm. The defendant in error alleged that the seed was sold to the plaintiff in error after inspection and acceptance by the plaintiff in error.

Upon the question of where rests the burden of proof, it becomes necessary to view the terms of the contract of sale as set forth in the answer of the defendant below and plaintiff in error herein. The plaintiff in error states that he undertook to inspect the said seed, but found it impracticable to do so; and then alleges such a condition as to the manner such seed was stored as made it impracticable for him to inspect the seed. The law does not hold the buyer to any extraordinary effort in making an inspection. See paragraph (c) 35 Cyc., pages 411, 412. Also in this connection see Hyatt v. Boyle (Md.) 25 Am. Dec. 276. Upon the proposition that only ordinary inspection is required, see 105 Ga. 384, 31 S. E. 110; 67

N. W. (Minn.) 352; 87 S. W. (Mo. [K. C. Ct. App.]) 602. The second case is a Minnesota case and has a strong analogy to the case at bar, and holds that under the circumstances an inspection was impracticable. The difficulties of inspecting over 4,000 bushels of blue grass seed, stored as the defendant says it was, is, as we view it, manifestly impracticable.

It is laid down as a rule in the sale of personal property that manufacturers and producers selling their goods and products are held to more implied warranties as to the quality and condition of their goods than are other sellers; and one of the implied warranties in the sale of seed, by the producer, is that such seed is free from foreign matter. See 35 Cyc., page 409, par. 9. One of the allegations of the plaintiff in error was that the seed purchased was not clean and that the cleaning of the same would reduce the quantity from 50 to 30 per cent.

It is true that where the buyer inspects, he waives implied warranties, except as to latent defects, but if an attempted inspection is made and is what is contemplated in law as impracticable, then there would be no waiver of implied warranties.

We contend that the defense, set up by the plaintiff in error, is not an affirmative defense and such as shifts the burden upon the one affirming it until the plaintiff has first proved his theory of the contract, whereupon the burden shifts to the one who affirms the contract to be different; and if he produces evidence of equal weight with that of the first prover, he should win; that is, if his proof of his theory of the contract is sufficient to counter-balance any preponderance in favor of plaintiff's theory of the contract, defendant is entitled to the verdict. In other words, the plaintiff must prove his case by a preponderance of all the evidence.

The allegations of the plaintiff in error's answer do not show a collateral or independent contract, and hence not a special warranty, but it is a part of and arises out of the main contract. It was not necessary for the defendant to allege his theory of the contract, and, since he saw fit to do so, it was gratuitous and surplusage and he could have made the proof under a general denial.

The following is from Knapp v. Roche, 94 N. Y. 333:

"It is always competent to prove under a general denial any facts tending to controvert the material affirmative allegations of a complaint." Following the rule laid down in Booth v. Powers, 56 N. Y. 33, and Quin v. Lloyd, 41 N. Y. 349.

See 35 Cyc., par. 3, page 374, quoting:

"In cases where the law implies a warranty, a party cannot secure the benefits of an express warranty by the use of words expressly stating the obligations which the law implies without such words."

See, also, Brown v. Baird, 5 Okla. 133; Heath Dry Gas Co. v. Hurd (N. Y..) 86 N. E. 18; Reed v. Randall, 29 N. Y. 358, 86 Am. Dec. 305; Garlord Manufacturing Co. v. Allen, 53 N. Y. 515-518.

A reading of these cases shows the principle to be this: That to bind a seller to special warranties or to such warranties as are not implied in law and hence do not arise from the contract of sale itself, there must be a collateral agreement of the seller to the buyer obligating himself under such special warranty to what he would not otherwise be bound in law to do. And when such special warranties are pleaded the burden of proving them, of course, is upon the pleader, their nature being such that they extend over and beyond the main contract.

It should be borne in mind that, the claim of the plaintiff below and defendant in error being unliquidated and based on an unexecuted contract, it was the duty of the defendant in error to plead the contract and that he had delivered the property and of the kind and quality contracted for, or his willingness so to do, and the refusal of the defendant to receive same and his damages resulting from such refusal. It was also necessary for him to make proof of those allegations. See 35 Cyc. 589, under the head of "Burden of Proof," relating to actions by seller against buyer for breach of sale contract. We are unable to see the force of the reasoning that holds that the burden of proof shifts because the defendant in his answer denies the terms of the contract as alleged by the plaintiff and sets up a different contract or a differing material term of said contract.

But, aside from the question as to whether the defendant did or did not set up affirmative matter in his answer, we contend that even if it is held that his allegations do constitute affirmative matter, still that would not relieve the plaintiff of the burden of making his proofs of the necessary allegations of his petition. In the case of Robinson et al. v. Peru Plow & Wheel Co., 1 Okla. 140, we find the following:

"It is a well-settled rule of Code pleading that the defendant under the general denial may controvert, by evidence. every fact which the plaintiff is bound to prove in order to recover in the action."

The following is from vol. 5, Am. & Eng. Encyc. of Law, page 27:

"But where, under special rules of pleading, a defendant is allowed to answer, setting up affirmative defenses in addition to a general denial of the plaintiff's allegations, this is held not an admission of the plaintiff's claim, and hence does not relieve the plaintiff of the burden of establishing a case which he assumed at the beginning."

In addition to the above assignment of error the plaintiff in error assigned five other errors. One of which was that the court erred in overruling defendant's demurrer to plaintiff's evidence, and such contention was based upon the fact that the seller failed to comply with the provision as to delivery. Another assignment was that the court committed error in refusing to give four instructions requested by the defendant below, plaintiff in error herein. Another assignment was that the court erred in giving the jury the instructions Nos. 2, 4, 5, 6, 8, 9, 10, 11, 14, and 16. The plaintiff in error based his contention upon the ground that the court, in those instructions, instructed upon all the elements of fraud and deceit and placed the burden upon the defendant to prove same by preponderance of the evidence. Another assignment of error was that the court erred in giving instruction No. 5, covering the question of rescission of contracts. Another assignment of error was in giving to the jury instruction No. 16, which was upon the measure of damages, and which the plaintiff in error contends did not follow the statute. All of the various assignments are presented in the brief of the plaintiff in error, and argued with considerable force, and are supported by citation of authority.

We think that the court committed error upon at least two of the additional assignments.

We think that the question of deceit and fraud is not involved in this case, and that the elaborate instructions of the court upon the various phases of fraud, wherein he told the jury that the burden was on the defendant below, plaintiff in error herein, to establish those elements by preponderance of the proof, should not have been given and that they were confusing and misleading to the jury. It is not necessary for a party, to prove a breach of warranty, to prove the elements of fraud. A warranty may attach without there being any intention to cheat or to defraud. The following quotation is from Woolsey v. Zieglar, 32 Okla. 715, 123 Pac. 167:

"If, therefore, the defendant made representations to the plaintiff upon which he relied, concerning the quality or character of the cow, intended by him to induce the purchase and which representations were relied upon by plaintiff, such direct and positive affirmations in law constitute a warranty. In 30 Am. & Eng. En. L. 136, it is said: 'Any distinct assertion or affirmation as to the quality or character of the thing to be sold, made by the seller during the negotiations for the sale, which it may reasonably be supposed was intended to induce the purchase and was relied on by the purchaser, will be regarded as a warranty unless accompanied by an express statement that it is not intended as such. If the affirmation was made in good faith, it is still a warranty. If made with a knowledge of its falsity, it is none the less a warranty, though it is also a fraud.' * * * In order that a warranty should attach to the language used by defendant, it was not necessary that the seller intended to cheat or defraud the purchaser."

Upon the question raised by the plaintiff in error, as to the instructions given by the court below, upon the measure of damages, the court failed to quote the statutes of Oklahoma upon this phase of the question, which statutes are as follows, being sections of the Revised Laws of Oklahoma, 1910:

Section 2862:

"The detriment caused by the breach of a buyer's agreement to accept and pay for personal property, the title of which is vested in him, is deemed to be the contract price."

Section 2863 is as follows:

"The detriment caused by the breach of a buyer's agreement to accept and pay for personal property, the title of which is not vested in him, is deemed to be:

"First. If the property has been resold, pursuant to section 3850, the excess, if any, of the amount due from the buyer under the contract, over the net proceeds of the resale; or,

"Second. If the property has not been resold in the manner prescribed by section 3850, the excess, if any, of the amount due from the buyer, under the contract over the value to the seller together with the excess, if any, of the expenses properly incurred in carrying the property to market, over those which would have been incurred for the carriage thereof, if the buyer had accepted it."

Section 3850, referred to above, reads as follows:

"One who sells personal property has a special lien thereon, dependent on possession for its price, if it is in his possession, when the price becomes payable; and may enforce his lien in like manner as if the property was pledged to him for the price."

We take this to mean that if the seller sells under this section, he must give the notice required under the provisions as to pledges. Section 4515, chapter on Pledges, reads as follows:

"A pledgee must give actual notice to the pledgor of the time and place at which the property pledged will be sold, at such reasonable time before the sale as will enable the pledgor to attend."

We take it that compliance with the above requirements of notice by seller and a sale thereunder becomes conclusive as to the buyer who has breached his contract of sale, and that he has no come-back as against the seller for failure to get reasonable value for the property. See White Walnut Coal Co. v. Crescent Coal & Mining Co., 254 Ill. 368, 98 N. E. 669, and given in 42 L. R. A. (N. S.) page 669. See, in connection with the last citation, extensive notes. See, also, case of Dill v. Mumford et al. (Ind.) 49 N. E. 861.

In the first case cited above, in note (B) discussing resales according to statute of Code, page 689, 42 L. R. A. (N. S.), we find the following:

"Where by Code, provision is made for a resale, the price received upon a resale is conclusive, if the sale is made according to the terms of the code"—citing a number of authorities.

In the same note we quote the following:

"But a resale need not be made according to the Code. If, however, it is so made, the price realized therefrom is conclusive as to the value of the property, while if the property is not sold in this manner, the vendor must prove the value thereof"—citing Hughes v. Germain Fruit Co., 106 Cal. 441, 39 Pac. 853.

From the above it would appear that a sale without statutory notice would place the burden upon the seller to prove that he had received the reasonable value of said property, but we are not deciding that proposition finally.

We think that the court erred in giving the instruction that he did. The instruction given by the court was in words and figures as follows:

"For the breach of an obligation arising from contract, the measure of damages is the amount which will comp nsate the party aggrieved for all the detriment l roximately caused thereby or which, in the ordinary course of things, would be likely to result therefrom. No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature or origin. And if you find the issue in this case in favor of the plaintiff and against the defendant, you may award him such damages as you think him entitled to recover against the defendant not to exceed the amount claimed and sued for by the plaintiff in his petition herein, $1,530.49, by reason of the expense that the plaintiff was necessarily put to by way of freight payments and in handling said stripped bluegrass seed caused by the failure of the defendant to comply with his contract in receiving and paying for said seed, and the expense, if any be shown, in storing and holding over said seed until the year 1917, and the loss, if any, sustained by the plaintiff in selling said seed at a price less than that agreed upon to be paid him by the defendant in his contract of purchase from the plaintiff."

We think that the great sin of the above instruction consists in the fact that the court did not anywhere in his instructions define what he meant by the following language, wherein he told the jury that if they found "the issue in this case in favor of the plaintiff and against the defendant." It is uncertain as to what the court meant by the word "issue." If he meant by "issue" that if the jury found that the defendant had breached his contract by failing to pay for the seed, the title of which had been vested in him by delivery pursuant to the contract, or if he meant to tell the jury that if they found that the defendant had breached a contract of sale, without legal cause, of goods not delivered to him, or if delivered to him were repossessed by the plaintiff, then the court was putting an issue to the jury which it was the duty of the court himself to find, and after its determination it was his duty to instruct them on the question of damage under the statute that was applicable. We think that his failure to do this was error and confused and misled the jury. We think, however, that under the facts as shown in the record section 2863 is the statute that applies to the case at bar. We think that there was no delivery of these goods, and even if there was a delivery, they were repossessed by the defendant in error, plaintiff below, and hence that the measure of damage applicable comes under said section 2863. We are borne out in this theory by the case of Dill v. Mumford, heretofore cited, as discussed on page 862.

There is not any dispute as to what the provision of the contract was as to how the goods were to be delivered. Neither is there any dispute as to what was done by the seller and the parties hereto and touching the question of delivery. It was therefore up to the court to determine in whom title lay and in whose possession said property was at the time of the breach and what rule of damages under the statute was applicable.

The following is from Mansur-Tebbetts v. Willet, 10 Okla. 383:

"The amount of damages that the plaintiff is entitled to recover is governed by statute, and the parties cannot change the rule by fixing an agreed amount."

If the parties cannot by agreement change the rule fixed by statute, neither can the court add to or take from the measure of damages fixed by the statute. The cautious rule for the court below to have pursued was to have given either the specific language of the statute on measure of damages that was applicable or given it in substance. The court did not do this, however, but gave a general instruction some of which was applicable and some of which was not.

It might be contended that the instruction comes within the second subdivision of section 2863. We think said instruction does not come within that subdivision, and is too broad, and permitted of the recovery of items of damage not contemplated by the provisions of said subdivision. It is very doubtful whether said subdivision would cover the item of costs of reshipment, the item of cost of storage, and the item of cost of insurance, and the item of unloading and reloading.

We therefore conclude that this cause should be reversed and remanded for a new trial.

KENNAMER, J. (dissenting). I cannot concur in the majority opinion herein. The burden of proof is upon the party who, under the pleadings, has the affirmative, and is ordinarily upon the plaintiff, unless the pleadings on the part of the defendant contain admissions which shift the affirmative to the defendant. The burden of proof is always upon the party against whom judgment would go in the event no evidence was adduced in the cause by either party. Elliott on Ev., vol. 1, secs. 130-132; Smock v. Carter, 6 Okla. 300; Bass & Harbour Furniture Co. v. Harbour, 42 Okla. 335, 140 Pac. 956; Fifth Ave. Library Society v. Phillips, 39 Okla. 799, 136 Pac. 1076; Brunswick & W. R. Co. v. Wiggins (Ga.) 39 S. E. 551, 61 L. R. A. 513.

Section 5002, Revised Laws 1910, par. 3, provides:

"The party on whom rests the burden of the issue must first produce his evidence; after he has closed his evidence the adverse party may interpose and file a demurrer thereto, upon the ground that no action or defense is proved. If the court shall sustain the demurrer such judgment shall be rendered for the party demurring as the record of the pleadings or the proof shall demand. If the demurrer be overruled the adverse party will produce his evidence."

The plaintiff, to recover in this action, must have established three things: The contract of sale as pleaded, a breach of the contract, and the amount of the damages sustained. The defendant, in the case at bar, had by general denial denied the contract as pleaded by the plaintiff; the second paragraph of his answer in effect pleaded a contract of sale different in terms from the contract as pleaded by the plaintiff. The plaintiff pleaded a contract that contained no warranty of the seed sold. The contract admitted or set out in the defendant's answer was a contract that contained a specific warranty; but the defendant, in admitting a contract of sale containing a warranty of the seed sold, does not admit that he entered into the contract as pleaded by the plaintiff, and the effect of the ruling of the trial court in casting the burden of proof upon the defendant at the commencement of the trial was to place the defendant in the attitude of having to disprove the contract as pleaded by the plaintiff and establish the contract that the defendant claims was made.

It appears from the record that the plaintiff contended that the seed was purchased after an inspection of the same by the defendant, and that he did not in any way warrant the seed as to kind or quality, and if the contention of the plaintiff was true as to the terms of the contract, he was entitled to recover in the action if he shipped the seed that the defendant inspected, for, as he contended, it was no part of the contract of sale that the seed was to be of a certain kind and quality. Now, the defendant never, at any time in his testimony or pleadings, admitted that he entered into such a contract, but, on the other hand, insisted that the plaintiff, in making the sale, specifically warranted the seed to be of a certain kind and quality, and the ruling of the trial court at the commencement of the trial in casting the burden of proof upon the defendant had the effect of saying to the jury that the plaintiff's contentions as to the kind of a contract made were true, and that the burden was upon the defendant to disprove the plaintiff's contract; that the contract was breached and plaintiff was damaged in the amount sued for. The general denial filed by the defendant undoubtedly denied that the plaintiff was damaged, and the defendant was under no duty or obligation to make any proof whatever until the plaintiff had established a prima facie case.

I am not unmindful of the general rule that the burden is upon the party who asserts a warranty to prove the breach thereof; but the defendant in the case at bar was under no burden to prove anything until the plaintiff had first established a prima facie case. Under the statute herein quoted and the pleadings as joined by the respective parties the plaintiff had the affirmative, in that he asserted that a certain kind of a

contract was made, a breach of the contract, and the damages he had sustained; and it was incumbent upon him to introduce sufficient testimony to establish a prima facie case before the defendant was required to say anything; and the trial court, in requiring the defendant to assume the burden of proof, violated a statutory right of the defendant.

In the case of Smock v. Carter et al., 6 Okla. 300, the opinion of the court, in part, is as follows:

"This was an action in the probate court of warranty in sale of personal property. The record shows that after the amended answer had been filed, by leave of the court, and which pleaded the general issue in addition to special matters of defense pleaded in the original answer, the amendment pleading the general issue was by the court stricken from the amended answer; that when the cause was called for trial the court required the defendant to assume the burden of establishing the issue and to introduce his testimony before any testimony had been introduced by the plaintiff; that after defendant's testimony had been introduced, the court sustained a demurrer thereto, and thereupon and without any evidence being offered in support of plaintiff's petition, or to show the amount of damages, if any, to which the plaintiff was entitled, the court instructed the jury to return a verdict for the plaintiff for the full amount of the damages claimed in his petition, and upon such verdict the judgment herein was rendered. It requires no argument or citation of authorities to demonstrate that there has been no proper trial of this cause, and that the proceedings had were but a mere travesty upon judicial procedure."

In the case at bar, had the defendant refused to assume the burden of proof, and had the court rendered judgment for the amount of damages sued for by the plaintiff in this action without the introduction of any testimony, I do not believe it would be seriously contended that the judgment could be sustained in this court.

In the case of Smock v. Carter, supra, appears the following statement of the law:

"In an action for damages, the burden of establishing the amount thereof sustained always rests upon the plaintiff unless the defendant specifically admits such amount in his answer, and, where no such admission is contained in the answer, it is error for the trial court to require the defendant to assume the burden of proof."

I conclude that in the case at bar the action of the trial court in casting the burden of proof upon the defendant and directing him to produce his testimony first had the effect of telling the jury that the cause of the plaintiff stood established, and that it was incumbent upon the defendant to present testimony to the jury that would disprove the claim of the plaintiff, and that this action on the part of the trial court was a violation of a statutory right of the defendant and a reversal of the ordinary rules of procedure in trying actions of this kind.

In view of the conclusions reached, I am forced to dissent from the majority opinion.

I am authorized to say HARRISON, C. J., and McNEILL and ELTING, JJ., concur.