## MILLER v. MILLER.

No. 21625. Jan. 16, 1934.

Lillard & Wheeling and J. Will Laws, for plaintiff in error.

Roscoe Bell and Frank C. Crouch, for defendant in error.

RILEY, C. J. This action was commenced by defendant in error, Dollie Miller, hereinafter referred to as plaintiff, against the Mid-Continent Life Insurance Company to enforce payment on a policy of insurance issued by said company upon the life of James Moses Miller deceased. This action is treated by both parties as an action at law. It is so treated by this court.

Dollie Miller is the widow of the insured and was originally named in the policy as beneficiary. Esther Miller, a sister of insured, intervened, on motion of the insurance company that she be made a party defendant, claiming payment upon the ground that the insured, during his lifetime, changed the beneficiary from Dollie Miller, his wife, to Esther Miller, his sister.

The defendant insurance company answered, admitting that on November 29, 1927, it issued and delivered said policy of insurance No. 63843, insuring the life of James Moses Miller in the sum of $1,000, and that at that time plaintiff, Dollie Miller, was named as the beneficiary therein; that prior to the death of said James Moses Miller, to wit, on or about March 29, 1928, defendant received, in regular course of mail, a request in writing purporting to have been signed by James Moses Miller, requesting that the name of the beneficiary in said policy be changed to Esther Miller, said request being set out in full, as follows:

"Mar. 26—

"Mid-Continent Life Insurance Co.

"I request the beneficiary on policy No. 63483 be changed to

"Esther Miller
(Sister)

"James Moses Miller."

The answer further pleaded, in substance, that said request not being on the regular form required, defendant sent to said James Moses Miller a regular form for change of

beneficiary, and that on or about April 1, 1929, and prior to the death of the insured, defendant received said form fully filled out purporting to bear the signature of said James Moses Miller. A copy thereof was attached to the answer, and is as follows:

"Change of Beneficiary

"To the Mid-Continent Life Insurance Company, Oklahoma City, Oklahoma.

"The undersigned, assured named in your policy No. 63483, subject to all the terms and conditions therein, requests a change of beneficiary under said policy, and for such purpose hereby designates as substituted beneficiary in said policy

"Esther Miller

(Give full name of each beneficiary)

of Oklahoma City, state of Oklahoma, whose relationship to assured is that of sister for her sole use and benefit, as follows (state share of each): All the policy.

"Witness my hand at Talihina in the state of Okla., this 1 day of April, 1929.

"James Moses Miller
"Insured.

"Wm. Head, Witness
"Talihina, Okla."

The answer of the insurance company admitted that said policy was in full force and effect at the time of the death of the insured, and that said defendant was indebted upon said policy, either to Dollie Miller or Esther Miller, the principal sum of said policy less the sum of $26.62, which it claimed to be due it on the premium of said policy. It then tendered the sum of $973.38 into court to be paid to the one of said claimants who might be adjudged by the court to be entitled thereto.

The intervener pleaded a full and complete change of beneficiary by insured, during his lifetime, from Dollie Miller to the intervener, Esther Miller.

Plaintiff, by way of verified reply, specifically denied that the insured, James Moses Miller, executed and signed either of the instruments purporting to request a change of beneficiary, and further alleged that if his purported signature appears upon any instrument authorizing or directing a change of beneficiary in said policy, the same was forged thereto; that if the beneficiary was changed during the life of James Moses Miller from plaintiff to intervener, said change was procured by intervener and others in her behalf by means of fraud, undue influence, menace, duress,

and deception; that on both dates said instruments purported to have been signed, said James Moses Miller was so weakened and enfeebled by long illness and so incapacitated mentally that he did not realize the consequence, meaning, and effect of his act, and was without mental capacity to direct or consent to such change, and was without will power to resist the importuning or coercion of intervener.

These allegations being denied under oath by intervener, the cause was tried to a jury, resulting in a verdict and judgment for plaintiff, and intervener appeals.

The policy provides:

"The insured may at any time and from time to time change any designated beneficiary, provided this policy is not assigned. Every change of beneficiary must be made by written notice to the company at its home office, accompanied by this policy for indorsement of the change hereon by the company, and unless so indorsed the change shall not take effect. After such indorsement, the change shall relate back to and take effect as of the date the insured signed said written notice of change whether the insured be living at the time of such indorsement or not, but without prejudice to the company on account of any payment made by it before such indorsement. In the event of the death of any beneficiary before the insured the interest of such beneficiary shall vest in the insured, unless otherwise provided herein."

The policy was indorsed as follows:

| "Date of Request: | Beneficiary changed to Esther Miller, Sister | Endorsed by R. W. Reese, Secretary." |
|---|---|---|
| "3-25-1929 | | |

The evidence shows that the indorsement was dated back to conform to the date when request was first received. Insured died on April 19, 1929. It appears that the change of beneficiary, in form, was made in all respects in conformity to the provisions of the policy and as authorized by sections 6726 and 6727, C. O. S. 1921.

There is no evidence whatever to sustain the charge of fraud, undue influence, menace, coercion, duress, and deception. There is little if any evidence reasonably tending to sustain the allegations of mental incapacity of the insured.

It is contended that there was no evidence whatever to show that insured, James Moses Miller, did not sign the request for change of beneficiary, and that the verdict of the jury is not sustained or supported

by the evidence, and that the court erred in refusing to sustain the demurrer of the intervener to the evidence of plaintiff, and erred in refusing to direct a verdict for intervener at the close of all the evidence.

The evidence shows that plaintiff and the insured were married January 6, 1927. Insured had been married before and had three children by the former wife; Mr. Miller was a driver for a laundry in Oklahoma City, and plaintiff worked in the laundry.

The policy of insurance was taken out by Miller on November 29, 1927, a little over ten months after they were married. Sometime in the latter part of the year 1928, insured was operated upon at the hospital for appendicitis. A minor operation was later performed. After that, insured and plaintiff had some domestic differences, and they separated a time or two between that and March 28, 1929. At that time Miller was suffering with tuberculosis, and on said date he was sent to the Sanitorium at Talihina, Okla., where he died April 19th.

Plaintiff testified that shortly before Miller was sent to the Sanitorium she paid the premium due on the policy to prevent its lapse. That she had possession of the policy, and insured thereafter requested that she deliver the policy to him; that he wanted to borrow some money on it. She testified quite positively that she knew the handwriting of insured; that she received a number of letters from him after he went to the Sanitorium; these letters were introduced in evidence and were such as to apparently show great love and affection toward plaintiff. There was no mention in any of them that he had changed the beneficiary in the policy. Plaintiff testified quite positively that the first request for change of beneficiary, dated March 29, 1929, was not in the handwriting of Miller, and that the signature thereto was not his signature. She also testified quite positively that the signature to the second request, dated April 1, 1929, was not the signature of James Moses Miller.

Mrs. Marie Morgan, the mother of plaintiff, testified that after the death of the insured she was present and heard a conversation between plaintiff and intervener in which the intervener stated that the form for request of change of beneficiary had been sent to insured at Talihina, but had been returned unsigned because he was too weak to sign it.

The evidence also shows that both of the requests were presented to the company by Esther Miller. Neither of them was shown to have been received through the mail.

On the other hand, Otis Miller, a brother of insured and of intervener, testified that he was present and saw insured write the first request for change of beneficiary, dated March 29th and saw him sign it; that after he signed it, he gave it to his sister, Esther Miller; that the two children of insured were present; that insured asked one of his boys to get him the paper to write it on, and that the boy did so.

Jack Miller, the son of insured, testified that he was 13 years old, and in grade 7A at school; that he was present and saw his father write the request; that his father asked him for a sheet of paper and he (Jack) went and got it for him; that he heard his father say he wanted to write a note to the insurance company; that he heard him tell his (Jack's) brother to get a pen and ink, and that he got him the bottle of ink and held it for his father while the father wrote the note.

Esther Miller testified that she was in the room when the request was written, but that she did not see insured write it; she identified the handwriting as that of insured, and she testified that after it was written, insured gave it to her, together with the policy, and asked her to go to the insurance office and have the beneficiary changed; that a few days thereafter she took the policy and request to C. C. Reneau, the assistant secretary of the insurance company, and that he kept them; that Mr. Reneau then filled out the blank form for change of beneficiary, and that she mailed it to insured at Talihina. That she received it back through the United States mail and took it to the insurance company office and gave it to Mr. Reese, the secretary of the company, and that thereafter Mr. Reese indorsed the change of beneficiary on the policy and returned the policy to her. In this she was corroborated by Mr. Reese.

As to the execution of this paper, Dr. William M. Head, acting house physician of the Sanitorium at Talihina, testified:

"Q. I will show you intervener's exhibit C, which is a paper entitled 'Change of Beneficiary', and ask you if you ever saw it? A. This is the paper that Mr. Miller signed and I witnessed. James Miller sign-

ed this paper and witnessed it. Q. Did you see him sign that paper? A. Yes, sir. Q. Where was it signed, if you remember? A. He was kind of out in the hall—not in the room exactly, but pulled out in the hall. Q. Does that paper bear your signature as a witness? A. Yes, sir; that's my handwriting here. Q. I point to the lower left hand corner of this paper and ask you if that is your signature on there? A. That is my own handwriting. Q. You wrote the words, 'Wm. Head, Talihina, Oklahoma'? A. Yes, sir. * * * Q. At whose request did you witness James Moses Miller's signature to this paper? A. Jim, I called him. Q. Jim. You mean by that, Mr. Miller? A. Yes. Q. He requested you to witness this? A. Yes."

And:

"Q. Did you hear at any time prior to the signing of this paper by James Moses Miller, anyone tell James Moses Miller to sign it? A. No. Q. Was anything said at the time this paper was signed or immediately prior to its signing by James Moses Miller, that would indicate to you that he knew what he was doing? By Mr. Bell: We object to that as calling for a conclusion of the witness, being leading and suggestive. A. He knew what he was doing. He knew me and called me to come. Q. Did he say anything that would indicate that he knew what this paper was? A. He knew what it was. By Mr. Bell: We object to that answer and ask that it be stricken as a conclusion of the witness. By Mr. Wheeling: Q. How do you know he knew what it was? A. Well, he says—he told me it was a transfer. Q. Told you it was a transfer? A. Yes. Q. Of what? A. No. I think he said 'change of beneficiary'— I can't give you the exact—I think he said change of beneficiary. Q. You do recall that there was something said about a policy and that— A. Beneficiary or something. He gave me to understand what it was. Q. He gave you to understand what it was before he asked you to witness the signature? A. Yes."

It will thus be seen that there is a conflict in the evidence as to whether or not the insured signed either of the two requests for a change of beneficiary in the policy.

If there is any question well settled in this jurisdiction it is that where there is any competent evidence reasonably tending to support a verdict, though the evidence be conflicting, and the cause is submitted to the jury upon instructions fairly stating the applicable law, the Supreme Court will not review the evidence for the purpose of determining the weight thereof, and substitute its judgment for the judgment rendered on the verdict, and it will not be disturbed on appeal.

Hundreds of cases might be cited in support of this rule. It is so held in no less than nine cases in Volume 82 of the Oklahoma Reports: Continental Refg. Co. v. Helton, 82 Okla. 122, 198 P. 575; Epps v. Ellison, 82 Okla. 224, 200 P. 160; Sand Spgs. Park v. Schrader et al., 82 Okla. 244, 198 P. 983; Jackson v. Darden, 82 Okla. 256, 200 P. 223; Smith v. Williams, 82 Okla. 258, 200 P. 194; Danciger v. Isaacs, 82 Okla. 263, 200 P. 164; Sharum v. Sharum, 82 Okla. 266, 200 P. 176; Wilson v. Moran, 82 Okla. 34, 197 P. 1051; Garrison Coal Co. v. Semple, 82 Okla. 60, 198 P. 497.

"The clause, 'where there is evidence reasonably tending to support a verdict', means evidence that is competent, relevant, and material and which to a rational and impartial mind naturally leads or it involuntarily tends to lead to a conclusion— to a verdict—for which there is a valid, just and substantial reason, and not one that is based upon an unfounded suspicion or is the result of a mere chimerical conjecture." Tate v. Coalgate St. Bk., 72 Okla. 276, 180 P. 687.

We have set out some of the evidence somewhat at length, not for the purpose of determining where the preponderance lies, but only for the purpose of showing the conflict therein.

If, therefore, there be a real conflict in the evidence, as in this case, it is not for this court to weigh the evidence. It is only when this court can say as a matter of law that there is no competent evidence reasonably tending to support the verdict of the jury, that this court will, in a law case, set aside such verdict. In view of the evidence of plaintiff, we cannot say as a matter of law that there is no competent evidence reasonably tending to support the verdict in this case. The jury has, under instructions fairly stating the applicable law, returned its verdict for plaintiff. The trial court had all the witnesses before it and approved the verdict, and this court will not substitute its judgment for that of the jury as to which side has produced the preponderance of the evidence, for this question is one peculiarly and exclusively for the jury. Any other rule would destroy our system of the right of trial by jury.

The judgment is affirmed.

CULLISON, C. J., and McNEILL, OSBORN, and BUSBY, JJ., concur.